IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY LIGAS, by his sister and next friend, )
Gina Foster, et al., on behalf of themselves and all )
others similarly situated, )
)
        Plaintiffs, )
)
   v. ) No. 05 C 4331
)
BARRY S. MARAM, in his official capacity as )
Director of the Illinois Department of Healthcare )
and Family Services, et al., )
)
        Defendants. )

MEMORANDUM OPINION AND ORDER REGARDING
CLASS CERTIFICATION

JAMES F. HOLDERMAN, District Judge:

Stanley Ligas and eight other individually named plaintiffs ("named plaintiffs") filed a renewed motion for class certification under Federal Rule of Civil Procedure 23(b)(2) against Illinois officials ("defendants")) who administer state programs that provide long-term care services for people with developmental disabilities.[1] (Dkt. No. 61.) For the reasons stated below, the renewed class certification motion under Rule 23(b)(2) is granted.

BACKGROUND

The named plaintiffs filed a complaint individually and on behalf of similarly situated individuals alleging that the defendants' failure to provide the plaintiffs with the option of long-term care services in the most integrated setting appropriate for their needs violates Title II of

---

[1] Plaintiffs' first motion for class certification, filed on August 8, 2005, was dismissed as moot, after parties agreed to have the court first chose to address three petitions to intervene.

1

Americans with Disabilities Act, *see* 42 U.S.C. § 12111 et seq., Section 504 of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794, and Title XIX of the Social Security Act, *see* 42 U.S.C. § 1396 et seq. The plaintiffs seek as injunctive relief for the defendants to give eligible developmentally disabled individuals the option of being placed in community settings with appropriate services and support rather than in institutions, such as Medicaid-certified long-term care placements serving those with developmental disabilities called intermediate care facilities ("ICF-DD"). The plaintiffs' lawsuit relies heavily on *Olmstead v. L.C.*, 527 U.S. 581, 587 (1999), which held that developmentally disabled individuals should be placed in community settings rather than institutions when a state's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account available state resources and the needs of others with disabilities. The Supreme Court explained that a state may rely on the reasonable assessments of its own professionals in determining whether an individual meets the essential eligibility requirements for community placement. *Id.* at 602.

The named plaintiffs allege in the complaint that they satisfy Illinois's eligibility requirements for community placement: (1) they have been found eligible for Medicaid services, *see* 89 Ill. Admin. Code § 140.642(b); (2) they either qualify for or have been recommended for community placement, and six of the nine plaintiffs specifically allege that a state assigned pre-admission screening and resident review agent ("PAS agent") determined that they are capable of living in a community-based setting, *see* 59 Ill. Admin. Code § 120.140; (3) and they or their guardians have requested to be placed in community settings or Community-Integrated Living

2

Arrangements ("CILA"). The crux of the named plaintiffs' allegations is that all the named plaintiffs could meet, and most do meet, Illinois's eligibility requirements for living in a community setting, yet the state has refused to place the plaintiffs in such a setting.

The proposed class that the named plaintiffs additionally seek to certify would consist of: "All persons in Illinois with disabilities who (1) have mental retardation and/or other developmental disabilities and who qualify for long-term care services; (2) with appropriate supports and services, could live in the community and who would not oppose community placement; and (3) either are institutionalized in private ICF-DDs with nine or more residents or are living in a home-based setting and are at risk for institutionalization because of their need for services." (Pl. Renewed Mot. for Class Cert. at 1.)

## LEGAL STANDARDS

As prerequisites for certification, the potential class must satisfy the following criteria: (1) numerosity; (2) commonality of facts and law; (3) typicality between the class claims and those of the named parties; and (4) adequacy of the representation by the named parties and class counsel. Fed. R. Civ. P. 23(a). Failure of the potential class to satisfy any one of these prerequisite elements precludes class certification. *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993); *Rahim v. Sheahan*, 2001 WL 1263493, *9 (N.D. Ill. Oct. 19, 2001). In addition, because the plaintiffs are seeking to certify a class under Rule 23(b)(2), they also must establish that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In deciding whether the party who is seeking class certification has met its burden of

demonstrating that certification is appropriate, the court should make whatever factual and legal inquiries are necessary under Rule 23. *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 675 (7th Cir. 2001). The decision to certify a class does not depend on the strengths or weaknesses of the asserted claims, but instead on whether the potential class satisfies the requirements under Rule 23. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

## ANALYSIS

A. Commonality:

The defendants first challenge the potential class's ability to satisfy the commonality requirement. The defendants argue that, as a result of the broad class definition, common issues of fact and law do not predominate. According to the defendants, their alleged conduct does not apply to the entire proposed class in that "potential class members might not be entitled to all or any of the requested relief" under the defendants' interpretation of the proposed class definition. (Defs. Resp. at 8.) The defendants also argue that the broad class definition would be inclusive of factual circumstances that vary too broadly among class members individuals with too diverse of factual circumstances. To exemplify this point, the defendants note that the proposed class would include as potential class members those who live at home "and are at risk for institutionalization because of their need for services." (Pl. Renewed Mot. for Class Cert. at 1.) Defendants argue that this class definition would encompass "*all* developmentally disabled persons living at home because all such persons conceivably would be 'at risk.'" (Defs. Resp. at 9.)

To some extent, the defendants may misunderstand the class definition. In arguing against commonality, the defendants seem to overlook the limitation on the class definition that

4

all members "qualify for long-term care" and "could live in the community." For example, the defendants' concern that the class would encompass all developmentally disabled living at home is resolved by the class requirement that members "could live in the community." (Pl. Renewed Mot. for Class Cert. at 1.)

Whether the proposed class satisfies the commonality requirement, however, is a close question. *See Wallace v. Chicago Housing Auth.*, 224 F.R.D. 420, 423 (N.D. Ill. 2004) (courts have broad discretion in deciding whether to certify a class and should err in favor of maintaining a class action.) A defendant's standardized conduct toward proposed class members, such as a generalized policy that affects all class members in the same way, has been considered sufficient to satisfy commonality. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see Gen. Tele. Co. of the SW v. Falcon*, 457 U.S. 147, 159 n.15 (1982). Where a defendant's standardized conduct is at issue, this court does not require that the putative class members all suffer the same injury, but rather the uniformity of the defendant's conduct toward the potential members and the plaintiffs' legal theory. *See Rosario v. Livaditis*, 963 F.3d 1013, 1018 (7th Cir. 1992).

In this case, the proposed class seeks to require the defendants to enact standardized policies regarding the community placement of eligible developmentally disabled individuals. The proposed class challenges the defendants' failure to provide developmentally disabled individuals with information about the option of community placement, systematically evaluate developmentally disabled individuals that qualify for long-term services to determine whether they are eligible for community placement, place those who are eligible in the community, and maintain a wait list for community placement. The fact that the named plaintiffs and some

proposed class members may have learned about the option of community placement or already have been assessed qualified for community placement by a PAS agent relates to the level of the injury suffered and not whether the defendants' conduct was sufficient standardized. *See Rosario*, 963 F.3d at 1018. The defendants have acted, or have failed to act, uniformly toward the proposed class based on their policies and lack of policies in place, and that is what the proposed class's legal claims challenge. This court determines that the proposed class is challenging the defendants' failure to enact policies regarding community placement, and in assessing this standardized conduct, common questions of law and fact predominate.

B. Typicality:

The commonality discussion also resolves most of the defendants' challenges to class certification based on the typicality requirement. *See Falcon*, 457 U.S. at 158 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge.") Related to their argument against commonality, the defendants contend that the breadth of the class definition results in too many legal and factual differences between the named plaintiffs and the potential class members. The defendants assert that, consequently, a showing that the named plaintiffs are entitled to relief would not necessarily prove that the potential class was also so entitled. The claims of the named plaintiffs and the proposed class, however, only must share the "same essential characteristics"; factual differences may still exist. *Retired Chicago Police Ass'n*, 7 F.3d at 597 (internal citations and quotations omitted); *see Chapman v. Worldwide Asset Mgmt, LLC*, No. 04-C-7625, 2171168, *3 (N.D. Ill. Aug. 30, 2005). That is the case here. The named plaintiffs, like the potential class members, seek to have the defendants establish a *policy* of informing individuals about community placement and of evaluating those interested in the

6

placement, regardless of whether they each have learned about community services or have been assessed "qualified" by a PAS agent. By definition, the class would be necessarily entitled to the same relief as the named plaintiffs if the named plaintiffs were to prove their case. The class members all qualify for long-term services, "could live in the community," and desire to do so. Part of the relief sought by the class is for the defendants to systematically evaluate those qualifying for long-term care who wish to be placed in the community. At this stage in the litigation, this court may presume based on the pleadings that a PAS agent would find qualified for community services the proposed class because by definition the class members qualify for long-term services and "could live in the community." Fed. R. Civ. P. 23(c)(1)(C); *see Morse v. Bankers Life & Cas. Co and PCS, Inc.*, No. 99-C-0193, 2000 WL 246245, *4 (N.D. Ill. Feb. 24, 2000).

One issue regarding typicality remains. Whether the three named plaintiffs', two of whom—David Childers and Tiffany McFadden—have been moved to CILAs and one of whom—Alex Tyner—now lives in a six-bed ICF-DD since the filing of the complaint, various residency circumstances destroy typicality. As a result of their moves, the three plaintiffs' claims for injunctive relief to live in a more integrated setting are moot. *In re Resource Tech. Corp.*, 430 F.3d 884, 886 (7th Cir. 2005) (case is moot when no further judicial relief is possible). The plaintiffs contend that these three plaintiffs may remain class representatives because their moves in residences occurred in December 2005, after the filing of the first motion for class certification on August 8, 2005. That motion, however, was dismissed as moot. The relevant date is the filing of the pending motion for class certification on January 10, 2005, after the three plaintiffs were moved to the CILAs and the six-bed ICF-DD in December 2005. *See*

7

*Fields v. Maram*, No. 04-C-0174, 2004 WL 1879997, *9 (N.D. Ill. Aug. 17, 2004) (certification relates back to the time that the class certification motion was filed). The three plaintiffs' claims do not relate back to the filing of the motion for class certification. Because their claims became moot prior to the filing of the motion for class certification, this court determines that David Childers, Tiffany McFadden, and Alex Tyner do not have claims typical of the class and are not adequate class representatives in this litigation. *See Gates v. Towery*, 430 F.3d 429, 430 (7th Cir. 2005). The dismissing of David Childers, Tiffany McFadden, and Alex Tyner as named plaintiffs does not, however, affect class certification. Six adequate class representatives whose claims are not moot remain. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) (suitability of new class representative must be determined independently of former proposed class representative found to be inadequate); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th 1995) (disqualification of the named plaintiff moots question whether to certify class unless lawyers for class find another representative). The proposed class satisfies the requirements of typicality (and, for that matter, adequacy, a ground not challenged by the defendants).

      C. Indeterminateness:

      The defendants also express concern that the proposed class is not sufficiently definite and so this court would have to engage in individual determinations to decide class membership. The individual determinations identified by the defendants are whether an individual is at risk for institutionalization because of their need for services, qualify for long-term care services, and could live in the community with appropriate support and services. As class is sufficiently definite if its membership may be determined by an objective criteria. *See Wallace*, 224 F.R.D.

8

at 425. The plaintiffs represent that they "do not ask this Court to make those determinations but rather enjoin defendants to do so." (Pl. Reply at 9.) In essence, the plaintiffs are willing to have the defendants make these determinations based on reasonable assessments from their own state treatment professionals in accordance with *Olmstead*, 527 U.S. 581. Because the defendants would be evaluating based on their own criteria whether a potential class member would meet the state's requirements and thus the class definition, court could order the defendants to engage in individual determinations should any relief be granted and not do so itself. *See Fields*, 2004 WL 1879997 at *7 n.8.

### D. Unchallenged Rule 23 Requirements:

The defendants appropriately do not raise objections to the other requirements of Rule 23(a), numerosity and adequacy, or of Rule 23(b)(2). With regard to the numerosity requirement, plaintiffs estimate that 6000 individuals live in ICF-DDs. Although not all of these individuals could live or wish to live in the community, this court may infer based on common sense that there are enough individuals living in ICF-DDs, as well as those living at home, who qualify for long-term care, could live in the community, and want to do so as to make joinder impractical. *See Mirfasihi v. Fleet Mortgage Corp.*, No. 01-C722, 2005 WL 1950386, *12 (N.D. Ill. Aug. 11, 2005). As for adequacy, no reason has been brought to this court's attention that would make this court question the remaining representatives' and plaintiffs' attorneys' abilities to adequately represent the class. Finally, the proposed class fits the definition for certification under Rule 23(b)(2), in that the defendants allegedly have acted or refused to act on grounds generally applicable to the class and appropriate for injunctive relief. Fed. R. Civ. P. 23(b)(2).

### CONCLUSION

Accordingly, the plaintiffs' renewed motion for class certification under Federal Rule of Civil Procedure 23(b)(2) for injunctive relief (Dkt. No. 61) is granted. This court certifies as class representatives Stanley Ligas, by his sister and next friend, Gina Foster; Lorene Bierman, by her guardians, Darlene and Joseph Bierman; Isaiah Fair, by his guardian Lutricia Fair; Adam Kulig, by his guardian, Norb Kulig; Jamie McElroy, by his guardian, Patricia McElroy; and Jennifer Wilson, by her guardians, Nancy and Richard Wilson. This court appoints the plaintiffs' counsel as class counsel. The class is defined as:

> A class for injunctive relief consisting of all persons in Illinois with disabilities who (1) have mental retardation and/or other developmental disabilities and who qualify for long-term care services; (2) with appropriate supports and services, could live in the community and who would not oppose community placement; and (3) either are institutionalized in private ICF-DDs with nine or more residents or are living in a home-based setting and are at risk for institutionalization because of their need for services.

Parties are to submit a revised Form 35 on or before 3/20/06. Counsel are requested to submit a courtesy copy of the Form 35 to Chambers on the day of filing. This case is set for a report on status and entry of a scheduling order at 9:00 a.m. on 4/4/06. The status report set for 3/30/06 is vacated.

ENTERED: *James F. Holderman*

_____
JAMES F. HOLDERMAN
United States District Judge

DATE: March 7, 2006