# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY LIGAS, by his sister and next friend, Gina Foster, et al., ) ) ) | |
| Plaintiff, ) ) | Case No. 05 C 4331 |
| v. ) ) | Judge James F. Holderman |
| BARRY S. MARAM, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, et al., ) ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Several motions are before this Court, and all of these motions involve the same issue, namely, whether the subpoenas issued by plaintiffs Stanley Ligas, et al. ("Plaintiffs"), properly seek discovery. Motions to quash the subpoenas have been filed by defendants Barry S. Maram, et al. ("Defendants"), as well as the subpoena respondents. In particular, two groups of subpoena respondents have filed motions to quash: Riverside Foundation and Golfview Development Center ("Riverside/Golfview"), and "17 facilities scattered throughout Illinois" ("Seventeen Facilities"). The Court collectively refers to Riverside Foundation and Golfview Development Center along with the Seventeen Facilities as "Respondents." Respondents comprise facilities that care for disabled individuals. (Seventeen Facilities' Mot. to Quash at 1.) In the wake of the motions to quash, Plaintiffs filed a motion to compel responses to the subpoenas. This matter was referred to this Court by Judge Holderman pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons that follow, the Court finds that the subpoenas are considered

unenforceable, until and unless Plaintiffs can articulate specific reasons outlining the relevance and need for the breadth of these subpoenas.

## I. **Background**

In the underlying suit, Plaintiffs allege that Defendants failed to provide proper services to Plaintiffs, who are persons with disabilities and who need some level of care due to physical or mental disabilities. (Pl.'s Resp. to Mot. to Quash at 1.) Plaintiffs also allege that Defendants' practices deprive Plaintiffs of the ability to choose whether to live in the facilities that Defendants provide. Specifically, Plaintiffs

> alleged that Defendants, through their administration of Illinois' developmental disabilities services system, systematically refused to provide community-based residential services and instead needlessly segregated them in institutions (known as Intermediate Care Facilities for the Developmentally Disabled, or ICF-DDs), even when individuals want to live in the community and are capable of doing so.

(*Id.*) Plaintiffs' complaint alleges that "Defendants violated the 'integration mandate' of Title II of the Americans with Disabilities Act (ADA)," as well as Title XIX of the Social Security Act. (Pl.'s Resp. to Mot. to Quash at 1-2.) Plaintiffs' class was certified pursuant to Federal Rule of Civil Procedure 23(b)(2).[1]

> Plaintiffs were certified as a class in March 2006. The class was defined as
>
> all persons in Illinois with disabilities who (1) have mental retardation and/or other developmental disabilities and who qualify for long-term care services; (2) with appropriate supports and services, could live in the community and who would not oppose community placement; and (3) . . . are institutionalized in private ICF-DDs with nine or more residents . . . .

---

[1] Rule 23(b)(2) provides a mechanism for injunctive class relief, where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2).

(Def.'s Mot. to Quash at 4 (quoting Dkt. No. 86, at 10).) Because this class is certified under Rule 23(b)(2), class members do not have an opportunity to opt out, and ultimate class membership will be determined after the conclusion of the underlying case. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) ("If the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf . . . . If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out." (citation omitted)); *Lively v. Dinegy, Inc.*, 05-CV-00063-MJR, 2007 WL 685861, at *14 (S.D. Ill. Mar. 2, 2007).

In order to gather evidence to support their case, Plaintiffs issued subpoenas to various ICF-DDs requesting production of the health and medical records of various ICF-DD residents. Because Plaintiffs' class potentially includes every person residing in an Illinois ICF-DD, Plaintiffs need a meaningful way to gather some portion of the residents' information in order to compose an accurate picture of the situation of the whole body of residents. Toward this end, Plaintiffs randomly selected 100 ICF-DD residents and issued subpoenas that requested those 100 residents' individual records. These subpoenas requested production and copying of the following:

> The complete file, including, but not limited to, any medical, dental, psychological, psychiatric, physical therapy, educational, vocational, residential rehabilitation or social work records and/or evaluations, incident reports, procedure repots, progress notes, operative notes, immunization history, laboratory results, diagnostic tests, individual service plans, behavior modification plans and diet plans, maintained by You [i.e., the ICF-DDs] for the following named residents . . . .

(Riverside/Golfview Mot. to Quash at 1.)

Plaintiffs further selected 50 residents out of this group of 100 residents and served additional subpoenas "requesting inspection of the facility for the purpose of observing the selected individual." (Pl.'s Resp. to Mot. to Quash at 3.) As the Court understands this request from discussions at oral argument, Plaintiffs intend to have an expert personally observe on a given day the experience of the various 50 residents in the ICF-DDs.

Plaintiffs intend to have experts examine the subpoenaed records as well. According to Plaintiffs,

> [t]he purpose of this review . . . is to obtain evidence probative of the allegations in the complaint, including the extent to which ICF-DD residents have been assessed for community placement, the extent to which they are capable of living in the community, what services they might need if they lived in the community, and whether they have been offered the choice of institutional or community care.

(Pl.'s Resp. to Mot. to Quash at 3-4.)

Shortly after the subpoenas were issued, a number of the ICF-DDs to which the subpoenas were directed objected to the subpoenas. In addition, Defendants and Respondents filed the instant motions to quash the subpoenas before this Court. Following the motions to quash, Plaintiffs filed a motion to compel the information the subpoenas seek. Defendants and Respondents largely adopted each other's arguments in their respective response briefs, and Plaintiffs' arguments against the motion to quash and in support of the motion to compel largely overlap. From the various briefs filed before the Court several issues arise: whether the subpoenas seek irrelevant information and whether the subpoenas' burden outweighs their benefit; whether the Health Insurance Portability and Accountability Act ("HIPAA") or the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("MHDDCA") prohibits disclosure of the materials without the residents' consent; whether the records are

privileged under federal common law or Illinois law; and whether privacy concerns militate against disclosure.

## II. Discussion

### A. Relevance

Under Federal Rule of Civil Procedure 26, a party may properly seek any relevant discovery; discovery need not be admissible in court if it is reasonably calculated to lead to discoverable information. *See* Fed. R. Civ. 26(b); *Biedrzycki v. Town of Cicero*, 04 C 3277, 2005 U.S. Dist. LEXIS 16423, at *22 (N.D. Ill. Aug. 8, 2005). This is a broad standard, and "relevant material for discovery purposes may encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Biedrzycki*, 2005 U.S. Dist. LEXIS 16423, at *22 (citation omitted). Although the relevance standard is broad, it is not infinitely broad, and discovery requests that the Court is not convinced will lead to relevant facts will be quashed. *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 624 (S.D. Ill. 2007) ("[T]he Court concludes that all of the six topics should be quashed, along with the depositions notices directed at Mr. Lakin and LLF, because none of those topics are sufficiently probative of relevant facts [that the Court would use in determining the issue at hand]."). The Court has broad discretion in determining questions of relevancy. *See Leffler v. Meer*, 60 F.3d 369, 374 (7th Cir. 1995) ("District courts enjoy extremely broad discretion in controlling discovery.").

Defendants and Respondents raise several arguments as to why Plaintiffs' subpoenas seek irrelevant information. An argument on which Defendants and Respondents rely heavily is that

the subpoenas seek information from ICF-DD residents who are not class members. (*See, e.g.,* Seventeen Facilities' Mot. to Quash at 7; Def.'s Mot. to Quash at 4; Riverside/Golfview Reply at 10 n.2.) Defendants and Respondents point to the class definition, which indicates that the class includes residents who "would not oppose community placement." Defendants and Respondents include examples and affidavits demonstrating that residents whose records are subpoenaed often do oppose community placement—these residents would prefer to continue to live in their respective ICF-DD.[2]

The Court does not believe that the mere fact that the subpoenas request information from persons who may not ultimately be members of the class is alone sufficient to render the information the subpoenas seek irrelevant. First, as Plaintiffs point out, the class is certified under Rule 23(b)(2). Thus, the boundaries of the class are fluid until the conclusion of the case; in the meantime, the potential class members do not have an opportunity to opt out. Thus, to the extent that the information sought is relevant because it sheds light on the ICF-DDs' treatment of class members, the information may ultimately be relevant even if the residents presently do not desire community placement. That said, the Court recognizes the intuitive appeal of Defendants' and Respondents' argument: because the residents do not desire placement in the community, the information gathered from Respondents is not relevant—by virtue of the class definition—to the issue of whether the ICF-DDs provided sufficient services for persons who *do* desire community placement. Nevertheless, because those persons desiring to remain in the ICF-DDs may ultimately change their minds, Defendants' and Respondents' arguments on this point are

---

[2] For example, one of the subpoena respondents filed a Response in Opposition to Plaintiffs' Motion to Compel, in which this respondent detailed the plight of one of its residents, who apparently does not desire community placement. (*See* Aspire on Eastern's Resp.)

unavailing. What is more, information regarding ICF-DD treatment of persons who desire to remain in the ICF-DDs may be probative of the ICF-DDs' general treatment of their residents. Because the class purports to apply to potentially all ICF-DD residents, the ultimate identity of the residents from whom the subpoenas request information does not destroy any relevancy that may otherwise be present.

Although the Court finds that the fact that the subpoenas apply to persons who do not desire community placement does not render the subpoenas irrelevant, the Court believes that the subpoenas nonetheless are not enforceable as written. As written, the subpoenas seek an array of records, including even dental records, all imaginable medical records, psychological records, behavioral records, etc. Plaintiffs have not articulated what an expert could learn from a review of these records that would advance Plaintiffs' case. Plaintiffs state generally that they seek to determine whether and how the residents are evaluated for community placement, whether the residents have a meaningful choice in this determination, and "whether Defendants comply with the utilization and discharge planning required under Medicaid." (Pl.'s Resp. to Mot. to Quash at 11.) The Court does not understand—and Plaintiffs have not articulated—how the entire medical history of the subpoenaed residents will aid in these determinations. Plaintiffs have simply stated that information relevant to their claim would be contained in the residents' medical records. (*Id.*) This statement does not help the Court understand the relevance of the information sought. Thus, the Court believes that the subpoenas will gather much irrelevant information.

The Court has additional concerns regarding Plaintiffs' desire to have an expert personally observe the residents. Such observation strikes the Court as yielding inherently subjective data—it would give insight only into what an expert observed on one given day for a short period

of time. Plaintiffs have stated that they selected 100 residents to subpoena in order to achieve a "random sampling," which will yield an accurate picture as to the whole group of residents. Under this assumption, the Court does not understand how the personal observations—even 50 personal observations—of an expert on a given day can provide reliable statistical evidence. Because the Court believes that the experts' observations will be subjective, the Court believes that Plaintiffs' expert's personal observations can lead only to very marginal probative evidence, if any at all.

### B. Burden

Related to the relevance of the material that the subpoenas seek is the burden on the residents and ICF-DDs in producing the subpoenaed information. Federal Rule of Civil Procedure 45 allows this Court to quash a subpoena if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). In light of the subpoenas' extreme breadth and consequent lack of relevance, as discussed above, as well as the intrusive nature of the information the subpoenas seek, the Court agrees that the subpoenas subject the ICF-DD residents to undue burden.

Plaintiffs' argument as to why the subpoenas do not subject the ICF-DDs or the residents to undue burden relies on *Boudreau v. Ryan*, No. 00 C 5392, 2001 U.S. Dist. LEXIS 12996 (N.D. Ill. Aug. 21, 2001). The court in *Boudreau* noted, in finding that the subpoenas did not subject the respondents to undue burden, that many of the subpoenaed agencies had already responded, either to state that they had none of the subpoenaed information or that they were in the process of gathering the information. *Id.* at *13. While it is true that in the present case some of the

subpoenaed ICF-DDs have already complied with Plaintiffs' subpoenas, the similarities with *Boudreau* end there. Unlike *Boudreau*, Plaintiffs' subpoenas are not narrowly tailored to gather information relevant to their claims; instead, Plaintiffs' subpoenas include blanket requests for all of the residents' records, and this would include many records that may have little if anything to do with this litigation. The breadth of Plaintiffs' subpoenas needlessly increases the burden on Defendants and Respondents.

Furthermore, the subpoenas in *Boudreau* requested copies of documents. Here, in addition to seeking documents, Plaintiffs desire to observe the daily habits of 50 residents. In-person observation is qualitatively more burdensome on the residents than copying documents; personal monitoring is disruptive to the lives of those observed, as well as to the ICF-DDs that house those residents. What is more, at oral argument, Defendants and Respondents expressed their understanding that, in an observation that has already taken place, Plaintiffs' expert's observation lasted all of a day. Plaintiffs have responded by filing an affidavit stating that the visit took three hours, two of which were spent speaking with the ICF-DD's executive director, and that the inspection did not include tours through residential areas. (Pl.'s Supp. Reply ¶ 2; Taylor Aff. ¶ 3.) Nevertheless, even if the observation was several hours and did not include intrusions into residential spaces, the Court is not convinced that the observations of the residents will lead to meaningful evidence in support of Plaintiffs' case, as the Court has stated above. Nor is there any guarantee that there will be no intrusion into private or semi-private areas. In addition, the observation will inflict burden on the ICF-DDs, as well as the other residents in the ICF-DDs, in that the visits will be disruptive, if only for a few hours at a time. This is not to mention the fact that the expert's observations would include observations of

the way in which the residents themselves are treated. The Court recognizes that at times such sensitive information may be subject to discovery; here, however, in light of the marginal relevance of the information the observations are likely to yield, the Court cannot grant such intrusive discovery its imprimatur. For this reason, the Court finds that the subpoenas subject the residents and the ICF-DDs to undue burden, and are unenforceable as written.

### C. HIPAA

Although the Court finds the subpoenas to be unenforceable, for the sake of completeness, the Court addresses Defendants' and Respondents' remaining arguments. Initially, Defendants' and Respondents' appear to argue that HIPAA protects the subpoenaed information from disclosure. (*See, e.g.*, Riverside/Golfview's Supp. to Mot. to Quash at 1-5.) Defendants and Respondents later suggest that HIPAA does not apply to the ICF-DDs. (*See, e.g.*, Seventeen Facilities' Reply at 3-4.) In any event, assuming HIPAA does apply to the ICF-DDs and the subpoenaed information, the Court does not believe HIPAA prevents the disclosure of the subpoenaed information in this situation.

Generally, HIPAA prevents the disclosure of health-related information without the consent of the persons whose health information is at issue. *See* 45 C.F.R. §§ 164.508, 164.512. A person who desires information protected by HIPAA is not without recourse. As stated in *Northwestern Memorial Hospital v. Ashcroft*, HIPAA is satisfied and discovery should be produced where

> the party seeking the information either notifies the patient (or at least makes a good faith effort to do so) or makes a "reasonable effort" to secure a qualified protective order, that is, an order that prohibits the use or disclosure of the

information outside the litigation and requires the return or destruction of the
information at the end of the litigation.

362 F.3d 923, 925 (7th Cir. 2004) (citing 45 C.F.R. § 164.512(e)(1)(v)).

Defendants and Respondents point out that Plaintiffs have not secured consent from the residents, and that many of the residents whose information was subpoenaed expressly decline to consent to Plaintiffs' use of the materials. This fact notwithstanding, Plaintiffs have a protective order in place in this instance. (*See* Seventeen Facilities' Reply Ex. 2.) This protective order is HIPAA qualified, and it includes the various provisions required per *Northwestern*. In other words, the protective order provides who will be able to see confidential information disclosed and what those persons will be permitted to do with that disclosed confidential information. These provisions ensure that the concerns identified in *Northwestern* are addressed. Because the protective order contains these requirements, the Court is convinced that HIPAA does not bar Plaintiffs from discovering the information sought in the subpoenas.

### D.     State Law

Defendants and Respondents also argue that the information is protected according to Illinois statute. MHDDCA provides that certain records and communications shall remain confidential unless as the Act provides. 740 Ill. Comp. Stat. 110/3. Generally, applicable exceptions in the Act provide that the information may be made available to parents or guardians. *Id.* 110/4. The records may also be disclosed if the person whose records are at issue gives consent; this consent must comply with a host of requirements, outlined in the Act, which generally require the party seeking the information to outline what information the party seeks, to

whom the information will be revealed, and what purpose the information would serve. *See id.* 110/5(b). Plaintiffs do not suggest that they received consent pursuant to 740 Ill. Comp. Stat. 110/5.

The Court believes that the MHDDCA does not apply to the present situation. Federal Rule of Evidence 501 and *Northwestern* govern this situation, and *Northwestern* clearly states that, in a federal question suit such as this one, state privacy and privilege laws do not apply, regardless of whether the state law might be more restrictive than the applicable federal rule. *Northwestern*, 362 F.3d at 925 ("But the Illinois privilege does not govern in federal-question suits . . . . The enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege regarding medical records were applicable to all federal cases."). The Seventh Circuit has held that in the interest of state-federal comity, the Court may apply state privileges. *See, e.g., Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) ("A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy."). Although the Court recognizes this option, Defendants and Respondents have given no compelling reason why this Court should deviate from *Northwestern*. Based on *Northwestern*, the Court finds that the MHDDCA does not apply to the present situation.

Defendants and Respondents also appear to argue that the Illinois state law physician-patient privilege should apply in this case to prevent the discovery of the residents' medical records. For much the same reasons that the MHDDCA does not apply, the physician-patient privilege should not apply in this situation. Federal Rule of Evidence 501

states that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Ev. 501. Under this rule, in a federal question case such as this one, "the contours and exceptions of such privileges are clearly a matter of federal common law; state-created principles of privilege do not control." *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983). *See also Jaffee v. Redmond*, 518 U.S. 1, 15 n.15 (1996). Because the physician-patient privilege is a creature of Illinois law, it does not have applicability in this case, which is a federal question case.[3]

### E. Federal Privilege

Defendants and Respondents argue that the subpoenas request documents that are protected by the federal common law psychotherapist-patient privilege. This privilege was identified in *Jaffee*, 518 U.S. at 15-16. The psychotherapist-patient privilege protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Id.* at 15. Although this privilege covers communications between a patient and a psychotherapist, it may also apply to communications between a patient and her licensed social worker. *Id.* at 15-16.

---

[3] Respondents appear to argue that the protective order itself directs Plaintiffs to comply with HIPAA and Illinois law (specifically the MHDDCA). (*See* Riverside/Golfview's Reply at 9; Seventeen Facilities' Reply at 5-6.) The Court does not believe that the protective order binds Plaintiffs to follow Illinois law. The protective order does reference HIPAA and the MHDDCA, but it does so largely in the context of defining what documents are to be considered "confidential" within the meaning of the protective order.

Where a party asserts that a privilege applies that protects materials from discovery, the party asserting the privilege has the burden of proving that all of the privilege's elements are satisfied. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Here, Defendants and Respondents have not demonstrated that records covered by the subpoenas are covered by the psychotherapist-patient privilege. This fact notwithstanding, as discussed above, the subpoenas as written are extremely broad and cover items including "psychotherapist" and "social work" records. In light of the broadness of the subpoena request, there exists a substantial likelihood that the subpoenas as written will cover information to which the psychotherapist-patient privilege applies.

The Court acknowledges that *Boudreau* faced a similar issue, and held that even though some of the records sought might include communications with social workers, the court was not convinced that the privilege applied. *Boudreau*, 2001 U.S. Dist. LEXIS, at *9-*10. *Boudreau* stated that there was "no indication that any such communications were made in the course of psychotherapy." *Id.* at *9. There court also stated that the defendants did not show that "the communications at issue were made with the expectation of confidentiality." *Id.* at *10.

Unlike *Boudreau*, here the subpoena is of such sweeping scope that it will encompass any document that might be able to enjoy literally the psychotherapist-patient privilege. The subpoenas themselves refer to documents relating to "psychiatric" and "psychological" records (i.e., they specifically request documents in the realm of the privilege, unlike *Boudreau*, where the documents requested documents relating to "mental and developmental disability services"). *Id.* In light of the sweeping scope of the subpoenas and the potentially thousands of pages of records that the subpoenas request from each resident, the Court does not believe it would be

judicious to find that the privilege does not apply, particularly in light of the Court's finding that the subpoenas are unenforceable until and unless Plaintiffs can come up with specific evidence. In other words, although Respondents and Defendants have not shown that the privilege applies, the subpoenas are so overly broad that if the privilege applies to any documents covered by the psychotherapist privilege, those documents would fall within the sphere of the subpoenas' applicability. This much is clear from the fact that the subpoenas on their face request all documents from psychotherapists. The likely application of the psychotherapist-patient privilege further supports the Court's conclusion that the subpoenas should be held unenforceable.

### F. Other Arguments

Defendants and Respondents make several miscellaneous arguments that the Court addresses. First, the Seventeen Facilities argue that constitutional privacy issues direct the Court to prohibit discovery. To the extent that any constitutional privacy issues are at play in this case, the Court is satisfied that the protective order in place assuages any privacy concerns. The Court also notes the cases Defendants and Respondents cite are not directly on point. (*See* Seventeen Facilities' Mot. to Quash at 13 (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 970 (9th Cir. 2006); *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980))). In none of these cases was a protective order in place, and in all of these cases a state actor was interested in seeking information. These cases present situations markedly different than the instant case, and the Court is confident that any confidentiality concerns are

adequately addressed in HIPAA and other applicable statutes, as well as the protective order that applies in this case.

Second, Riverside/Golfview argue that the Nursing Home Care Act prevents Plaintiffs from obtaining access to the records. (Riverside/Golfview Mot. to Quash at 5-6.) The Court does not believe that this Act serves to shield ICF-DD residents from federal subpoenas. Rather, the Court understands the Act as delineating under what conditions a person seeking to apprise residents of their rights may do so. *See* 210 Ill. Comp. Stat. 45/2-108; Ill. Admin. Code tit. 77, § 350.3250(h). In terms of gaining access to ICF-DDs, this Act is largely parallel to federal subpoena power, in that both the Act and subpoenas outline what and how information is to be collected from residents. Thus, the Court does not believe the Act itself directs the Court to limit discovery in this instance.

Third, Riverside/Golfview argue that enforcing the ICF-DDs to disclose the subpoenaed information would be force the ICF-DDs to break the law. (Riverside/Golfview Supp. Mem. at 6.) Riverside/Golfview point to Illinois law that makes violation of the MHDDCA a "Class A misdemeanor." (*Id.* (citing 740 Ill. Comp. Stat. 110/16).) As Plaintiffs have pointed out, the Seventh Circuit has stated that the MHDDCA is inapplicable to the extent that it purports to restrict valid discovery in federal court. *See Mem'l Hosp*, 664 F.2d at 1063-64. The Court rejects Riverside/Golfview's argument.

### III. Conclusion

For the foregoing reasons, the Court finds the subpoenas unenforceable as written.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: August 10, 2007.