

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY LIGAS, by his sister and next friend, Gina Foster, et al., | )<br>)<br>) |
| Plaintiff, | ) Case No. 05 C 4331 |
| v. | ) Judge James F. Holderman |
| BARRY S. MARAM, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, et al., | ) Magistrate Judge<br>)   Martin C. Ashman |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On September 18, 2007, Plaintiffs, Stanley Ligas *et al.*, filed a motion asking this Court to compel a number of third-party Intermediate Care Facilities for the Developmentally Disabled ("ICF-DDs") to produce documents in compliance with Plaintiffs' amended subpoenas. Many of the ICF-DDs, as well as a group of ICF-DD residents, filed responses opposing Plaintiffs' motion and asking the Court to quash the subpoenas. After oral argument was held on October 19, 2007, Plaintiffs reached an agreement with a majority of the subpoena respondents and withdrew their motion as to those respondents on November 14, 2007. The motion to compel, therefore, now applies only to two of the ICF-DDs, Riverside Foundation ("Riverside") and Golfview Developmental Center ("Golfview"). This Court has the authority to decide this matter under Judge Holderman's referral pursuant to 28 U.S.C. 636(b)(1)(B) and Local Rule 72.1. For the reasons that follow, Plaintiffs' motion is granted in part, and denied in part.

## I. Background

Plaintiffs are suing Defendants, the administrators of Illinois' developmental disability service system, in a class action seeking "to end the unneeded and unwanted segregation of individuals with developmental disabilities who have been placed in institutions, despite their ability to live in integrated community settings." (Pls.' Mem., Mot. to Compel, at 1.) Plaintiffs allege that Defendants are administering the Illinois system in a way that denies members of the class the opportunity to live in community settings rather than in larger institutions. (*Id.* at 2.) Plaintiffs assert that this denial of community placement has an adverse effect on the class members and constitutes a violation of the Americans with Disabilities Act, the Rehabilitation Act, and Title XIX of the Social Security Act. (*Id.* at 1.) The class, certified in March 2006 by Judge Holderman, is defined as

> all persons in Illinois with disabilities who (1) have mental retardation and/or other developmental disabilities and who qualify for long-term care services; (2) with appropriate supports and services, could live in the community and who would not oppose community placement; and (3) . . . are institutionalized in private ICF-DDs with nine or more residents . . . .

*Ligas v. Maram*, No. 05 C 4331, 2007 WL 2316940, at *1 (N.D. Ill. August 10, 2007).

In order to support their claims, Plaintiffs retained an expert and sought discovery from seventy-eight ICF-DDs regarding a randomly-selected sample of 100 residents from which they hope to extrapolate data that will be relevant to the claims of the class as a whole. (Pls.' Mem., Mot. to Compel, at 3.) Plaintiffs' initial subpoenas sought the "complete file" of each resident, potentially encompassing every piece of information an ICF-DD might have about one of its residents. *Ligas*, 2007 WL 2316940, at *2. A number of the ICF-DDs filed motions to quash Plaintiffs' subpoenas, arguing that the requested discovery would violate federal and state health

care privacy statutes, that the materials were protected by federal and state common-law evidentiary privileges, and that the requests were overly broad and burdensome. *Id.*

In its Memorandum Opinion and Order of August 10, 2007, this Court held that the subpoenas were unenforceable as written, finding that they were overly broad, likely to gather irrelevant information, and unduly burdensome. *Ligas*, 2007 WL 2316940, at *4-5. At the same time, the Court rejected the ICF-DDs' argument that the federal Health Insurance Portability and Accountability Act, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, and the Nursing Home Care Act barred the disclosure of the requested materials, and held that any constitutional privacy concerns were adequately addressed by the protective order already in place in this case. *Id.* at *5-7, 8-9. Therefore, the Court left open the possibility that Plaintiffs' subpoenas would be enforceable if Plaintiffs were to narrow the scope of their requests.

Following the Court's ruling, Plaintiffs issued new subpoenas to the ICF-DDs. Plaintiffs assert that the new subpoenas are a product of their efforts to work with their expert to identify a narrow range of relevant documents for each individual. (Pls.' Mem., Mot. to Compel, at 5.) The new subpoenas request several categories of documents, including: (1) each resident's Individual Client Assessment Profile ("ICAP") and Individual Program Plan ("IPP") or equivalent document, as well as any assessment or evaluation attached to or prepared for the IPP; (2) documents pertaining to each resident's treatment program, treatment schedule, behavioral support plans or intervention programs, and each resident's "DD Client Certification/Recertification" form; (3) any documents relating to the resident's inclusion in or exclusion from the Prioritization of Unmet Needs for Services database; (4) any discharge plans

and related documents; and (5) any documents relating to the resident's ability and desire to live in a community or non-ICF-DD setting or the resident's guardian's desire for the resident to live in a community or ICF-DD setting. (Pls.' Mem., Mot. to Compel, Ex. A.) While the categories of documents requested in the revised subpoenas are more discrete, the time frame of Plaintiffs' request has actually expanded from three years in the original subpoenas to five years in the subpoenas now under consideration. (*Id.*)

While many of the ICF-DDs initially opposed the enforcement of the amended subpoenas, all but Riverside and Golfview subsequently agreed to cooperate with Plaintiffs pursuant to the terms of a stipulation filed with the Court on November 14, 2007. Plaintiffs argue that the Court should now enforce the subpoenas and compel the remaining ICF-DDs to produce the requested documents. Plaintiffs contend that they have corrected the flaws that prevented the Court from enforcing the first set of subpoenas by making the new subpoenas narrower and less burdensome. The remaining ICF-DDs raise three objections.[1] First, they argue that the subpoenas remain unduly burdensome. In a related argument, they point to the residents' status as third parties who may or may not be unnamed class members[2] as a reason to limit the

---

[1] When the motion was originally briefed and argued, the ICF-DDs and residents presented a united front in opposition to the enforcement of the subpoenas. Therefore, the Court attributes all of the objections raised in the ICF-DDs' briefs to Golfview and Riverside, even though they may have been raised partially or entirely in the briefs and arguments of other ICF-DDs that have since agreed to cooperate. The one exception is the argument based on the territorial limits of Rule 45 that was raised by certain facilities located outside of the Northern District of Illinois and more than 100 miles from this Court. Because Golfview and Riverside are located within the Northern District of Illinois, they cannot raise this objection.

[2] Because the class was certified under Federal Rule of Civil Procedure 23(b)(2), ultimate class membership will be determined after the conclusion of the underlying case. *See Ligas*, 2007 WL 2316940, at *1.

scope and burden of discovery with respect to the residents. Finally, they argue that many of the documents sought by Plaintiffs are protected from compelled disclosure by the federal psychotherapist-patient privilege recognized by the United States Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996). The Court addresses these arguments in turn.

## II. Discussion

### A. Overbreadth/Undue Burden

Under Federal Rule of Civil Procedure 26, a party is entitled to discover any material, even evidence that would not be admissible in court, if it is reasonably calculated to lead to admissible evidence relevant to issues that are or may become part of the case. *See* Fed. R. Civ. P. 26(b); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). Nonetheless, the Court will quash subpoenas that fail to satisfy this lax test because the materials sought are unlikely to lead to relevant information. *See Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 624 (S.D. Ill. 2007). Furthermore, Federal Rule of Civil Procedure 45(c)(3)(A)(iv) allows the Court to quash a subpoena when compliance would impose an undue burden on the party from whom discovery is sought.

In its previous opinion, the Court held that Plaintiffs' first set of subpoenas was overly broad and unenforceable, finding that Plaintiffs' discovery requests were likely to gather much irrelevant information and that their seemingly limitless scope would make compliance unduly burdensome for the ICF-DDs. *Ligas*, 2007 WL 2316940, at *4. Plaintiffs contend that their revised subpoenas have fully addressed these concerns. The ICF-DDs argue that the subpoenas remain overly broad. With respect to the subject matter of the subpoenas, the Court agrees with

Plaintiffs. In contrast to the original subpoenas, which would have required the "complete file" of each resident regardless of the relevance of any individual document within the file, the revised subpoenas primarily seek specific documents such as ICAPs, IPPs, and discharge plans. (Pls.' Mem., Mot. to Compel, Ex. A.) Having been revised to seek specifically identifiable documents that are logically connected to the subject matter of the underlying case because they reflect the physical and mental capabilities of individuals within Illinois' developmental disability service system, these requests are no longer overly broad or unduly burdensome.

The arguments of the ICF-DDs focus on other requests that are less precise, such as the request for "any document that contains or describes the resident's active treatment program." (Pls.' Mem., Mot. to Compel, Ex. A.) The ICF-DDs argue that these requests are overly broad and unduly burdensome because they could "easily be interpreted to constitute most, if not all, of the resident's medical file." (Facilities' Resp., Mot. to Compel, at 4.) The Court finds that these requests are neither overly broad nor unduly burdensome. The requests are not overly broad because they are reasonably calculated to lead to the discovery of admissible evidence. For example, the broadest request—for all documents that contain or describe a resident's treatment program—will by its terms lead to the discovery of evidence regarding the needs and abilities of the resident. The residents' needs and abilities are in turn relevant to determining their ability to live in the community, information that is crucial to Plaintiffs' claims. The other requests for categories of documents are similarly tailored with limiting language that ensures that the documents produced will be relevant to issues in this case. In contrast to Plaintiffs' original subpoenas, which contained no such specific language and demonstrated no articulable

connection between the documents sought and the issues of the case, the Court finds that the revised subpoenas are not overly broad.

It follows that the subpoenas are not unduly burdensome. The Court accepts the ICF-DDs' statement that the documents requested in the revised subpoenas may be numerous and may encompass nearly all of what was sought before. Nonetheless, Rule 45(c)(3)(A)(iv) does not provide a mechanism for this Court to quash a subpoena merely because compliance may be burdensome; rather, the burden imposed must be "undue." A burden is undue when it is not justified by an offsetting benefit to the administration of justice. This is the case when compliance is unlikely to yield relevant evidence, as illustrated by the Advisory Committee Notes to the 1991 Amendments to Rule 45(c), which illustrate the concept of undue burden with the example of an adversary who is forced to attend trial as a witness even though he is known to have no personal knowledge relevant to the dispute. Clearly, the burden in such a case is "undue," since there is no offsetting benefit in the form of relevant information. Similarly, in *Northwestern Memorial Hospital v. Ashcroft*, a case that both sides to this dispute have relied on, the Seventh Circuit held that the burden imposed by requiring the production of sensitive medical records relating to abortion procedures was "undue" when the party seeking the records repeatedly failed to articulate how they would be probative of any issue in the case. 362 F.3d 923, 930-32 (2004).

Like the Seventh Circuit in *Northwestern Memorial*, this Court is not insensitive to the burden on the residents whose medical records are sought; notwithstanding the protective order already in place in this case, production of their private information may cause them or their families to feel that their privacy has been invaded. *See Northwestern Mem'l*, 362 F.3d at 929.

Even so, these concerns "do not necessarily justify withholding probative evidence." *Id.* at 930. As discussed above, Plaintiffs' requests are tailored to gather information that is relevant to the medical and mental needs and abilities of the residents, which in turn may yield highly probative evidence to support or disprove Plaintiffs' claim that there are numerous individuals currently living in large institutions who are willing and able to live in a community setting. The concerns of the ICF-DDs and their residents cannot be ignored, but neither can the clear relevance and probative value of the evidence Plaintiffs seek. Taking both into account, the Court concludes that the subpoenas are not unduly burdensome.

The fact that the residents whose records are sought are not named parties to the case does not alter this result. The ICF-DDs argue that, given the nature of the Rule 23(b)(2) class certification in this case, the residents are either unnamed class members—in which case discovery should be limited—or unnamed non-class members—in which case discovery should be even more circumscribed. (Facilities' Resp., Mot. to Compel, at 5.) For the first of these arguments, the ICF-DDs cite *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999 (7th Cir. 1971). However, *Brennan* tends to undercut the ICF-DDs' position. While the *Brennan* court stated that "absent class members should not be required to submit to discovery as a matter of course," it also stated that requiring absent parties to furnish information was proper when required by "justice to all parties." *Id.* at 1005. The *Brennan* court ultimately held that discovery requests to absent class members are proper when the Court is persuaded that "the requested information is actually needed in preparation for trial" and that "discovery devices are not used to take unfair advantage" of absent class members. *Id.* at 1006. Given the Court's findings above

regarding the relevance and probative value of the information sought, it is clear that Plaintiffs' requests satisfy the *Brennan* standard.

The ICF-DDs argue in the alternative that their residents should be treated simply as non-parties, and that therefore they should be entitled to even greater protection from the burdens of discovery than unnamed class members. (Facilities' Resp., Pls.' Mot. to Compel, at 5.) This Court has held in the past that "'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *U.S. v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. October 21, 2005). However, this factor is not in itself dispositive, and the Court's determination as to whether any burden is undue must still be arrived at by "evaluating the balance of competing needs." *Id.* at *5. The Court in *Amerigroup* found that the burden of production was substantial, while the relevance and probative value of the materials sought were uncertain. *Id.* at *7. In this case, as discussed above, the Court finds that the information sought is relevant, probative, and critical to Plaintiffs' case. Therefore, the balancing of interests would favor Plaintiffs even if the residents whose information is sought were to be treated as non-parties.

While the Court finds in favor of Plaintiffs with respect to the substantive scope of the subpoenas, it agrees with the ICF-DDs that the expansion of the document requests from three to five years is unnecessary. Given that Plaintiffs would have been satisfied with three years' worth of documents had the Court enforced their original subpoenas, the Court finds that the expansion from three to five years is overly broad. Consequently, Plaintiffs are entitled only to documents from the past three years.

## B. Privilege

The ICF-DDs also object to Plaintiffs' subpoenas on the basis that the information sought is privileged. Specifically, they argue that each resident's "Individual Program Plan, Individual Service Plan, Individual Habilitation Plan, Individual Treatment Plan, Interdisciplinary Team Plan and any assessment or evaluation attached thereto" are protected from discovery by the federal psychotherapist-patient privilege first recognized by the United States Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996). (Subpoena Respondents' Resp., Pls.' Mot. to Compel, at 4.) The Court disagrees.

In *Jaffee*, the Supreme Court, recognizing "the importance of the patient's understanding that her communications with her therapist will not be publicly disclosed," held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure." 518 U.S. at 13, 15. The privilege also extends to "confidential communications made to licensed social workers in the course of psychotherapy." *Id*. at 15. Relying on *Jaffee*, the ICF-DDs argue that the various Plans—all of which are apparently produced by an "Interdisciplinary Team" in a meeting at which the resident is present—should be treated as privileged communications between therapist/social worker and patient in the course of psychotherapy. This argument, while innovative, is lacking in several respects.

First, the psychotherapist-patient privilege recognized in *Jaffee* applies only to "confidential communications." 518 U.S. at 15. Communications that are not made with the expectation of confidentiality are not privileged. *Boudreau v. Ryan*, No. 00 C 5392, 2001 WL 1001156, at *4 (N.D. Ill. August 24, 2001). In this case, state law requires that the documents at

issue be preserved by the ICF-DDs and made available for review by state and federal agencies. *See* 77 Ill. Admin. Code § 350.1630(a). Furthermore, it appears from the parties' briefs and statements at oral argument that the documents are also regularly disclosed in order to establish the residents' eligibility for Medicaid benefits and to demonstrate compliance with Medicaid requirements. (*See* Pls.' Mem., Mot. to Compel, at 13-14; Subpoena Respondents' Resp., Pls.' Mot. to Compel, at 6.) The fact that the documents can be viewed by any number of government agencies and are in fact routinely disclosed to Medicaid authorities convinces the Court that there can be no reasonable expectation of confidentiality with respect to the information recorded in the documents.

The ICF-DDs are also unable to make the necessary showing that the documents contain communications between a patient and a therapist for the purpose of diagnosis and treatment. While the ICF-DDs state that "the ultimate goal" of the various Plans at issue is the diagnosis and treatment of the resident, they acknowledge that they are not psychiatric treatment facilities. They also admit that, while the Plans may take into account the psychological state of the resident, neither the Plans nor the meetings at which they are created are in themselves a form of psychological diagnosis or treatment. The fact that the Plans are formulated at Interdisciplinary Team meetings attended by some caregivers who are licensed therapists and others who are not also weighs against a finding that the documents are privileged. The Court concludes based on these circumstances that although the Plans and the meetings that produce them may have a psychological component, they do not constitute "psychological diagnosis or treatment" for the purposes of the psychotherapist-patient privilege. It follows that statements made at the meetings that are recorded in the Plans are not within the scope of the privilege.

Finally, the documents are not privileged because, as the ICF-DDs acknowledged at oral argument, the statements on which the Plans are based are generally not communications between residents and their therapists, but rather statements by therapists to other caregivers explaining or interpreting the psychological state of the residents. The ICF-DDs nonetheless argue that the privilege should apply in this case because many of the residents are incapable of communicating on their own. In light of these circumstances, they urge the Court to treat the therapists' statements as substitutes for the statements that the residents would make on their own were they capable of doing so. This argument fails for two reasons.

First, assuming that a therapist speaking on behalf of a non-communicative resident can understand and articulate accurately what the resident is thinking and feeling, the resulting statements would not fall within the literal terms of the privilege defined in *Jaffee* because they are made to one or more third parties who are neither therapists nor patients. Furthermore, while federal courts have authority under Federal Rule of Evidence 501 "to continue the evolutionary development of testimonial privileges," *Trammel v. United States*, 445 U.S. 40, 47 (1980), the Court declines the ICF-DDs' invitation to do so in this case because extending the psychotherapist-patient privilege here would not advance the policies that the privilege promotes. The purpose of the privilege is to protect the "atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Jaffee*, 518 U.S. at 10. This assumes that the patient might not confide in the therapist in the absence of a privilege, which assumes in turn that the patient's communications to the therapist are voluntarily and consciously made or withheld. In asking the Court to find that the Plans are privileged, however, the Facilities have asserted that many of the residents have such

severe mental impairments that they are non-communicative and require a therapist to speak for them. This argument proves too much: the purpose of the privilege—encouraging free and open communication with therapists—can only be served when the patient can choose to communicate or not to communicate in light of the level of protection accorded to the information she discloses. By definition, a patient who does not voluntarily communicate information because she is literally non-communicative lacks that capacity.

A finding that evidence is privileged deviates from the "fundamental maxim that the public . . . has a right to every man's evidence." *Jaffee*, 518 U.S. at 9 (*quoting U.S. v. Bryan*, 339 U.S. 323, 331 (1950).). Because "the privilege is in derogation of the search for truth, it is construed narrowly," and the party asserting a privilege has the burden of showing that the elements of the privilege are satisfied. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The ICF-DDs have not shown that the elements of the psychotherapist-patient privilege set forth in *Jaffee* are satisfied, and the Court finds that expanding the privilege to cover the documents at issue in this case would not promote the policy interests that the privilege reflects. Therefore, the Court finds that the documents are not privileged.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to compel responses to their amended subpoenas is granted as to third-party respondents Riverside Foundation and Golfview

Developmental Center with the limitation that Riverside and Golfview shall produce responsive documents for the last three years only.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: November 27, 2007.