# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 4331 | **DATE** | 7/7/2009 |
| **CASE TITLE** | Stanley Ligas, et al. vs. Barry S. Maram, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section below, the class certification order [85] is vacated and approval of the proposed consent decree is denied. Plaintiffs' counsel are to notify the class members as efficiently and inexpensively as possible of the change in status of this lawsuit. *See Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) (requiring notice to class members when class is decertified). The case is set for a status report as to the continued litigation of the individual plaintiffs' claims on July 30, 2009, at 9:00 a.m.

■[ For further details see text below.]            Notices mailed.

## STATEMENT

    Stanley Ligas and eight other individually named plaintiffs (the "plaintiffs") filed this lawsuit on behalf of themselves and other similarly situated individuals against the State of Illinois officials who administer state programs that provide long-term care services for people with developmental disabilities (the "defendants"). In their complaint, the plaintiffs alleged that the defendants failed to provide developmentally disabled people with long-term care services in the most integrated setting appropriate for their needs in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Title XIX of the Social Security Act. The plaintiffs' lawsuit relies heavily on *Olmstead v. L.C.*, 527 U.S. 581 (1999). In *Olmstead*, the Supreme Court held that developmentally disabled individuals should be placed in community settings when (1) the state's treatment professionals have determined that community placement is appropriate, (2) the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and (3) the placement can be reasonably accommodated considering the available state resources and the needs of other people with disabilities. *Olmstead*, 527 U.S. at 587. The plaintiffs allege that, despite their requests that they be placed in a community-based setting and the fact that the plaintiffs meet the criteria set forth in *Olmstead*, the State of Illinois has refused to place them in the least restrictive setting appropriate to their needs. The plaintiffs therefore request injunctive relief on behalf of themselves and class members, requiring the defendants to place eligible developmentally disabled individuals in community-based settings with appropriate services and support or Community-Integrated Living Arrangements ("CILAs") rather than in intermediate care facilities ("ICF-DD"). On March 7, 2006, the court granted plaintiffs' motion for class certification [85].

    On November 13, 2009, the plaintiffs filed with the court a Proposed Consent Decree on behalf of the class [295], setting forth the terms of the settlement entered into between the plaintiffs and the defendants. The Proposed Consent Decree defined the class as:

        All persons in Illinois 18 years of age or older who:

    (a)    have mental retardation and/or other Developmental Disabilities and who are eligible for Medicaid ICF/MR services;

    (b)    with appropriate supports and services, could live in the community; and

    (c)    either: (i) are, or will in the future be, institutionalized in private ICF-DDs with nine or more residents or (ii) are, or will in the future be, living in a home-based setting and are at risk of institutionalization because of their need for services.

(Proposed Consent Decree ¶ 2.) A "Notice of Proposed Class Action Settlement and Hearing" was sent to the class on March 31, 2009 [327].

    On July 1, 2009, the court held a hearing to determine the fairness, adequacy and reasonableness of the Proposed Consent Decree and to consider any objections by class members to the Decree. In preparation for the hearing, class members submitted more than 2,500 written objections to the Proposed Consent Decree. Approximately 240 people attended the fairness hearing, and thirty-four individual class members or their legal guardians spoke at the hearing. Many more objectors were represented at the hearing by counsel. A common theme among the objectors was the concern that many developmentally disabled individuals, who are within the class definition, would be adversely affected by provisions of the Proposed Consent Decree even though the individual neither met the *Olmstead* criteria nor desired placement in a community-based setting.

    The class definition included in the Proposed Consent Decree is considerably broader than the class contemplated by the plaintiffs' lawsuit and, because of the highly individualized needs of the developmentally disabled as demonstrated at the fairness hearing, is unlikely to be rectified by modification of the class definition. To proceed as a class action, the potential class must satisfy the following criteria: (1) numerosity; (2) commonality of facts and law; (3) typicality between the class claims and those of the named parties; and (4) adequacy of the representation by the named parties and class counsel. Fed R. Civ. P. 23(a). The court may review its class certification "any time before a decision on the merits." *Movement for Opportunity & Equal. v. Gen. Motors Corp.*, 622 F.2d 1235, 1278 (7th Cir. 1980). "If the certification of the class is later deemed to be improvident, the court may decertify" the class. *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981).

    The named plaintiffs assert that they meet the criteria set forth in *Olmstead*, but the class definition fails to restrict the class to developmentally disabled individuals that are eligible for, and desire, community placement. Indeed, many of the objections received by the court concerned class members that were neither eligible for, nor desired, community placement. And based on the objections raised at the fairness hearing, it appears that sufficient commonality does not exist among the highly specialized needs and desires of the class members and their legal guardians. Similarly, because the named plaintiffs meet the conditions set forth in *Olmstead* insofar as they have been adjudged eligible for, and desirous of, community placement, the named plaintiffs' claims are not typical of class members who may or may not satisfy the *Olmstead* criteria. It therefore became clear to the court at the fairness hearing that commonality and typicality among class members are lacking in this case. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (explaining that commonality is closely related to typicality). Consequently, decertification of the class is appropriate.

    In addition, briefing and arguments by the various parties' counsel as well as the statements of the individual objectors, both at the July 1, 2009 hearing and in writing, establish that the settlement negotiated by the plaintiffs and the defendants is considerably broader than was necessary to address the needs of the

class contemplated by the plaintiffs' lawsuit. For example, the Proposed Consent Decree attempts to establish annual evaluations for developmentally disabled individuals that are neither required by *Olmstead* or necessary to secure the rights of individual class members. (*See* Proposed Consent Decree ¶ 7.) The Decree also attempts to restructure the administrative process through which the State of Illinois receives applications and assesses eligibility for services available to developmentally disabled individuals. (*See* Proposed Consent Decree ¶ 6.) Moreover, on June 11, 2009, the court struck paragraph ten of the Proposed Consent Decree after receiving confirmation from the plaintiffs and the defendants that paragraph ten was not a "deal breaker," and plaintiffs' counsel indicated in a letter to this court dated July 2, 2009, that the plaintiffs were amenable to revision of paragraph seven of the Proposed Consent Decree consistent with the language proposed by the Misericordia Resident Objectors at the fairness hearing [415]. Such broad drafting of the Proposed Consent Decree overreaches the objective of the plaintiffs' lawsuit, which plaintiffs' counsel described as ensuring the plaintiffs' "right to choose" to reside in the most integrated setting appropriate to their needs.

Because commonality and typicality do not exist among class members, class certification is vacated and approval of the proposed consent decree is denied. The case will proceed as an individual lawsuit rather than as a class action. The plaintiffs are directed to notify class members of the change in status of this lawsuit. *See Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) (requiring notice to class members when class is decertified).

| | Courtroom Deputy Initials: | |
|---|---|---|