IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY LIGAS, by his sister and next friend, Gina Foster, et al., on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 4331 |
| BARRY S. MARAM, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Pending before the court are Burton A. Brown and Barbara A. Reilly's "Motion to Intervene" (Dkt. No. 446) ("Brown/Reilly Motion")) and "Proposed Intervenors' Motion for Limited Intervention Pursuant to Fed. R. Civ. P. 24" (Dkt. No. 464 ("Group Motion")). For the reasons set forth below, the Brown/Reilly Motion is dismissed as moot and the Group Motion is granted.

BACKGROUND

The Named Plaintiffs[1] in this lawsuit are individuals with mental retardation and other

---

[1] The plaintiffs named in the Second Amended Complaint include: Stanley Ligas, by his sister and next friend Gina Foster; David Cicarelli, by his guardians James and Julianne Cicarelli; Isaiah Fair, by his guardian Lutricia Fair; Jamie McElroy, by his guardian Patricia McElroy; and Jennifer Wilson, by her guardians Nancy and Richard Wilson (collectively "Named Plaintiffs"). Although the individually-named plaintiffs have changed with each successive complaint, the court need not distinguish among the different plaintiff groups for purposes of its analysis.

developmental disabilities who seek to enforce their statutory rights to long-term care services

from the State of Illinois in the most integrated setting appropriate to their needs, as set forth by

the Supreme Court in *Olmstead v. L.C.*, 527 U.S. 581 (1999). (Dkt. No. 436 ("2d Am. Compl.")

¶¶ 1-8.) The Named Plaintiffs wish to proceed on behalf of themselves and on behalf of "all

others similarly situated." (*Id.* ¶ 1.) Although their initial attempt to certify a class in this

lawsuit was successful (Dkt. No. 85), the court ultimately decertified the class on July 7, 2009,

after thousands of class members submitted written and oral objections to the first Proposed

Consent Decree. (Dkt. No. 420 ("7/7/09 Order").) The court's July 7, 2009 ruling was based on

its finding that "commonality and typicality do not exist among class members." (7/7/09 Order

3.)

With a new class definition in hand, and a Second Amended Complaint on file (Dkt. No.

436), the Named Plaintiffs and the State Defendants[2] have again sought class certification and

preliminary approval of a second proposed consent decree. (*See* Dkt. No. 455 ("Class Cert.

Mot."); Dkt. No. 456 ("Class Cert. Mem."); and Dkt. No. 456, Ex. A ("Amended Proposed

Consent Decree").) The movants wishing to intervene in this lawsuit are approximately 2,000

previous objectors who live in intermediate care facilities for people with developmental

disabilities ("ICF-DD") or are on a waiting list for an ICF-DD, as well as at least one individual

who currently resides in a community integrated living arrangement ("CILA") (collectively

---

[2] The defendants are Barry S. Maram, in his official capacity as Director of the Illinois Department of Healthcare and Family Services, and Michelle R.B. Saddler, in her official capacity as Secretary of the Illinois Department of Human Services (collectively "State Defendants").

"Proposed Intervenors").[3]  The Proposed Intervenors seek to intervene "for the limited purpose

of (1) participating in the Court's consideration of the Joint Motion for Settlement Class

Certification, Preliminary Approval of Consent Decree, and Approval of Notice Plan . . . and (2)

filing objections to and participating in any fairness hearing on the proposed consent decree."

(Dkt. No. 465 ("Group Mem.") 1.)

ANALYSIS

A non-party has a right to intervene in an action if (1) the non-party files a timely motion

to intervene; (2) the movant claims an interest related to the subject matter of the action; (3)

disposition of the action threatens to impair or impede the movant's ability to protect that

interest; and (4) the movant's interest is inadequately represented by the existing parties.  *Ligas*

*ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (citing *United States v. BDO*

*Seidman*, 337 F.3d 802, 808 (7th Cir. 2003)).[4]  "A failure to establish any of these elements is

grounds to deny the petition."  *Id.*  It is undisputed that the Group Motion has been timely filed.

I.      Interest in Proposed Class Settlement

The Proposed Intervenors first contend that their interest in this litigation is "to protect

their rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), as

interpreted by *Olmstead v. L.C.*, 527 U.S. 581 (1999)."  (Dkt. No. 470 ("Group Reply") 1.)  In

*Olmstead*, the Supreme Court held that "under Title II of the ADA, States are required to provide

---

[3] Burton A. Brown and Barbara A. Reilly have declined to file a reply brief in support of their original motion to dismiss, instead joining the Group Motion, the Group Memorandum, and the Group Reply.  (Dkt. No. 471.)  Accordingly, the court deems arguments in the Brown/Reilly Motion to have been subsumed by being included in the Group Motion and therefore moot.

[4] Because this court finds intervention is appropriate as a matter of right, the court does not address the Proposed Intervenors' alternative argument regarding permissive intervention.

community-based treatment for persons with mental disabilities when [1] the State's treatment professionals determine that such placement is appropriate, [2] the affected persons do not oppose such treatment, and [3] the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead*, 527 U.S. at 607. The Proposed Intervenors argue that their interest lies in enforcing "the mandate of *Olmstead* . . . that the needs of Intervenors and other ICF-DD residents be considered in determining the State's obligation to provide the 'community-based' services required by the proposed consent decree." (Group Mem. 2.) The court finds that the Proposed Intervenors' reliance on *Olmstead* is well placed.

   *Olmstead*'s requirement that the court consider the needs of other individuals with mental disabilities must be read in its full intended context. The relevant portions of *Olmstead* address the government officials' asserted defense—that providing the community-based services requested by the plaintiffs would "fundamentally alter" the nature of the services provided by the State to individuals with mental disabilities. *Id.* at 594-95; *see also* 28 CFR § 35.130(b)(7). Accordingly, the Supreme Court's instruction in *Olmstead* that the district court "consider [on remand], in view of the resources available to the State, not only the cost of providing community-based care to the litigants, but also the range of services the State provides others with mental disabilities, and the State's obligation to mete out those services equitably" applies because the district court was charged with "evaluating [the] State's fundamental-alteration defense." *Id.* at 597.[5]

_____

   [5] Although a majority of the Justices in *Olmstead* recognized that a State can raise the fundamental-alteration defense in appropriate circumstances, the Court did not deliver a majority opinion on the scope of the defense. Writing for a plurality, Justice Ginsburg (joined by Justices O'Connor, Souter, and Breyer) emphasized that a court's review of the fundamental-alteration

The State Defendants in this case have not raised a fundamental-alteration defense.

Nevertheless, this court reads *Olmstead* to grant the Proposed Intervenors a right to intervene in this litigation. The Justices writing for the *Olmstead* Court were very much aware of competing claims on limited State resources. For example, Justice Ginsburg's plurality opinion notes the States' obligation "[t]o maintain a range of facilities and to administer services with an even hand." *Id.* at 605. Similarly, Justice Kennedy's concurring opinion recognizes the "continuing challenge" that States face "to provide . . . care in an effective and humane way," and it is in this context that he stresses the "central importance" of deferring to decisions made by State policymakers. *Id.* at 608-10. Accordingly, the *Olmstead* Court directed the lower courts to "tak[e] into account the resources available to the State and the needs of others with mental disabilities" if the fundamental-alteration defense is raised. *Olmstead*, 527 U.S. at 607. Because the State Defendants apparently do not believe it is proper, necessary, or advisable to raise the fundamental-alteration defense at this point in the litigation,[6] this court simply has no basis to address the third prong of the *Olmstead* equation. Yet, a settlement that does not consider the needs of the Proposed Intervenors—or a settlement promising relief to the Named Plaintiffs that

_____

defense would necessarily involve a complex analysis, beyond simply comparing a plaintiff's request for community-based services against the State's budget as a whole, or weighing the cost of community care for one individual against the cost of institutionalized care for that same individual. *Id.* at 603-04. In a concurring opinion, Justice Kennedy (joined by Justice Breyer) stressed the "central importance" of "apply[ing] today's decision with . . . appropriate deference to the program funding decisions of state policymakers." *Id.* at 610. Justice Stevens declined to address the scope of the fundamental-alteration defense, on the grounds that the question was not properly before the Court. *Id.* at 607-08. Throughout *Olmstead*, the Justices' cautious reluctance to question State funding decisions is apparent.

[6] The State Defendants did raise this affirmative defense in response to the original Complaint and the First Amended Complaint. (Dkt. No. 21 at 54; Dkt. No. 93 at 52.) The State Defendants have not filed an answer to the Second Amended Complaint.

the State admittedly cannot deliver—would run contrary to the rationale set forth in *Olmstead*.

Accordingly, the court finds that the Proposed Intervenors have a right under *Olmstead* to have

their needs considered before the Amended Proposed Consent Decree is approved. The interest

the Proposed Intervenors have in this litigation is "direct, significant, and legally protectable."

*Solid Waste Agency of N. Cook County v. U.S. Army Corp of Eng'rs*, 101 F.3d 503, 506 (7th Cir.

1996).

The State defendants argue that the Proposed Intervenors are prohibited from intervening

in this case under *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982). Although relevant to this

court's analysis, *Wade* is distinguishable. In *Wade*, the decision most directly impacting the

rights of the proposed intervenors had already been made by the U.S. Department of

Transportation. The only issue pending before the court was whether the agency's decision

comported with relevant statutory requirements. *Id.* at 185. Accordingly, the Seventh Circuit

determined that "the governmental bodies charged with compliance can be the only defendants."

*Id.* In this case, the decision most directly impacting the rights of the Proposed Intervenors—

whether to approve the Amended Proposed Consent Decree—has yet to be made. Pursuant to

Rule 23(e)(2), this court will be obliged to evaluate the fairness of the Amended Proposed

Consent Decree and, to satisfy itself that the *Olmstead* mandate is being fulfilled, the court

believes hearing from the Proposed Intervenors is necessary.

The court further finds that the pending litigation threatens to impair the Proposed

Intervenors' interest in having their needs considered before the Amended Proposed Consent

Decree is approved. In *Olmstead*, the Supreme Court recognized that the needs of individuals

with mental disabilities are often in conflict. *Olmstead*, 527 U.S. at 597. The balance set forth

by the *Olmstead* Court implicitly acknowledges that the needs of one group can be threatened by

the needs of another. In this case, the claims in the Second Amended Complaint address only the

needs of the Named Plaintiffs and others who similarly desire community-based services. The

Amended Proposed Consent Decree requires that the State Defendants "implement sufficient

measures . . . to provide Community-Based Settings and Community-Based Services pursuant to

the Decree" (Decree ¶ 4), but does not include any specific mention of the Proposed Intervenors'

need for State resources. Moreover, the Amended Proposed Consent Decree is slated to remain

in effect "for at least nine (9) years." (Decree ¶ 45.) If the needs of the Proposed Intervenors are

not considered before the Amended Proposed Consent Decree is approved, the Proposed

Intervenors' future ability to have their needs considered in balance with the State's obligations

to other individuals with mental disabilities would be significantly impaired "as a practical

matter." Fed. R. Civ. P. 24(a)(2).

Finally, the court finds that the Proposed Intervenors' interest is not adequately

represented by the existing parties. It is uncontested that the Named Plaintiffs do not represent

the Proposed Intervenors' interest. This leaves to the State Defendants the task of representing

the Proposed Intervenors' interest in this litigation. As representatives of "governmental

bod[ies] charged by law with protecting the interests of the [P]roposed [I]ntervenors," the State

Defendants are "presumed to adequately represent [the Proposed Intervenors'] interests unless

there is a showing of gross negligence or bad faith." *Ligas*, 478 F.3d at 774. In other words,

"'more is needed than a presumption of inadequacy based on the diversity' of the State

Defendants' interests." (Dkt. No. 60 ("12/22/05 Order") 3 (quoting *Solid Waste Agency*, 101

F.3d at 508).) The events unfolding since the denial of the first motions to intervene in this case

suggest that the presumption of adequacy has been overcome.

Specifically, in agreeing to the original Proposed Consent Decree (Dkt. No. 298-1

("Original Decree")), the State Defendants agreed to a provision stating:

> Within six (6) years of Approval of the Decree, Defendants shall, to the extent consistent with governing law, reduce the use or aggregate licensed capacity of the ICF-DD System by an amount equivalent to the number of Individuals who, in aggregate and consistent with their Evaluations, Service Plans and choices, have transitioned to Community Based Settings from ICF-DDs.

(Original Decree ¶ 10.)  Counsel for the State Defendants took the position in open court that this provision was "a nod to the reality that you cannot rebalance the system without adjusting the overall capacity" and specifically acknowledged "it's the State's intention to try to reduce capacity" at ICF-DDs.  (Dkt. No. 432 ("6/9/09 Hr'g Tr.") 48:19-21; 52:18-19.)  Counsel further recognized that the Proposed Intervenors objected to the State Defendants' position.  (Dkt. No. 433 ("6/11/09 Hr'g Tr") 7:23-8:6 ("That's what they object to, that the State is intending to reduce capacity.  Well, that's going to remain whether [paragraph 10] is in there or not, and they're going to be able to point to my statements in open court . . . that the State intends to reduce capacity.  That's what they object to, and they're going to be able to object to that, and I suspect will object to that, whether paragraph 10 is in there or not.").)

It is certainly possible that the State Defendants have considered the needs of the Proposed Intervenors in agreeing to the Amended Proposed Consent Decree.  However, the above-quoted statements make clear that the State Defendants do not represent the Proposed Intervenors' interests before this court.  The court also cannot ignore its previous experiences with this litigation and the court agrees that the fact that the Proposed Intervenors are not adequately represented by either party in this litigation "is evidenced by the almost 2,000 objections they filed to the prior proposed decree."  (Group Mem. 13.)[7]

---

[7] The State Defendants argue that they took "great pains" to protect the Proposed Intervenors' interests "in receiving the services of their choice and not being adversely affected

The Proposed Intervenors have described their interest under *Olmstead* in a number of different ways—as an interest in "the care and placement of their children or wards" (Group Mem. 6); in "the quality of the essential services and supports" provided by the State (*id*. at 2); and in "maintaining the financial viability of their selected living arrangement" (*id.* at 11). Taken together in light of *Olmstead*, these formulations suggest that the Proposed Intervenors' main interest lies in the equitable distribution of State resources among individuals with mental disabilities. Assuming, without deciding, that the Proposed Intervenors have a right to equitable care under the ADA, *see Olmstead*, 527 U.S. at 601-02 ("We emphasize that nothing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings."), there is nothing preventing them from bringing their own lawsuit against the State if and when their right to equitable services has actually been violated. *See Wade*, 673 F.2d at 186 ("if a time comes when applicants determine that their alleged interests were not given the required statutory consideration, they can then bring suit, as plaintiffs, to compel defendants to follow the statutorily mandated procedures"). However, inviting subsequent litigation when the issues raised by the Proposed Intervenors are so closely related to, and threatened by, this litigation seems duplicative, wasteful, and unjust. Even though the State has not raised the fundamental-alteration defense, the court finds that the Proposed Intervenors' stated interest under the *Olmstead* doctrine is sufficiently related to this litigation to require intervention as of right.

---

by the proposed decree." (Dkt. No. 467 ("Defs.' Resp.") 12-13.) While the court appreciates the State Defendants' efforts, protecting an interest is not the same as representing it.

II.     Interest in Class Certification

Because the State Defendants and Named Plaintiffs parties specifically excluded the

Proposed Intervenors from the proposed class definition, the court separately addresses the

question of whether the Proposed Intervenors have an interest related to class certification.  In

relevant part, the proposed class definition includes individuals "for whom Defendants . . . have

a Current Record reflecting that the individual has affirmatively requested to receive

Community-Based Services or placement in a Community-Based Setting."  (Decree ¶ II.2.(a)(iii)

and (b)(iii).)  "Current Record," in turn, is defined as:

> an accurate record reflecting that the Individual, or the Individual's legal guardian,
> has affirmatively requested to receive Community-Based Services or placement in
> a Community-Based Setting, and, to the best of Defendants' knowledge, that record
> has not been withdrawn or retracted by the Individual or the Individual's legal
> guardian.  All Individuals who objected (either personally, or through the
> Individual's legal guardian) to the Proposed Consent Decree that was the subject of
> the July 1, 2009 Fairness Hearing in this Litigation, on the grounds that they do not
> wish to receive Community-Based Services or placement in a Community-Based
> Setting shall be deemed to have retracted any record reflecting that, prior to such
> objection, he or she had affirmatively indicated that he or she seeks to receive
> Community-Based Services or placement in a Community-Based Setting.

(Decree III.3.(i) (emphasis added).)

The Proposed Intervenors argue that they have an interest in the proposed class definition

because "it encompasses those, like the Intervenors, whose current choice is to live in an ICF-

DD."  (Group. Mem. 7.)  Pursuant to Federal Rule of Civil Procedure 24, a non-party only has a

right to intervene in a lawsuit when its interest is "direct and substantial."  *Lake Investors Dev.*

*Group v. Egidi Dev. Group*, 715 F.2d 1256, 1259 (7th Cir. 1983) (citing *Meridian Homes Corp.*

*v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).  While the proposed class

definition could encompass some individuals who at one point expressed an interest in receiving

community care but who now desire care in an institutionalized setting, it is not immediately

10

clear that the proposed class definition translates into a direct interest of the Proposed

Intervenors, who themselves are explicitly excluded from the class.

On the other hand, the Proposed Intervenors note in their reply brief that, since filing

their motion for class certification, the Named Plaintiffs and the State Defendants "have actively

solicited individuals with disabilities to return a form to the State so that the State can claim that

it has a 'current record' of the individual requesting community-based services." (Group Reply

9.)  This solicitation has been sent to at least one Proposed Intervenor (*id.*, Ex. 4), and the

Proposed Intervenors contend that "some recipients of [similar] unexpected solicitations are

fearful that their failure to return the form as requested by the State will result in a loss of

benefits."  (*Id.* at 9-10; *see also* Ex. 5.)

The fact that the named parties have solicited one of the Proposed Intervenors to join a

class definition that explicitly excludes the Proposed Intervenors has the court concerned.

Again, the court's previous experience with this litigation cannot be ignored.  The Named

Plaintiffs and State Defendants have a poor record in terms of articulating a class definition that

appropriately addresses the pending claims and proposed relief.  As demonstrated in full force at

the fairness hearing in July 2009, waiting until the class action fairness hearing to entertain

concerns regarding the class definition can be both burdensome and costly.  The court finds that

the Proposed Intervenors are in the best position to apprise the court of any unforeseen or

undisclosed impact that the class definition may have on its evaluation of the Amended Proposed

Consent Decree.  Additionally, because the ability to identify class members impacts both the

question of class certification and the appropriateness of the Proposed Amended Consent

Decree, the court finds the Proposed Intervenors have an interest in participating in the court's

consideration of the "Joint Motion for Settlement Class Certification, Preliminary Approval of

Consent Decree, and Approval of Notice Plan."

CONCLUSION

It is undisputed that the State's resources are limited—perhaps severely so. (*See* Group

Reply, Ex. 3 (June 11, 2009 letter from the Illinois Department of Human Services, noting the

State's intent to cut funding to both CILAs and ICF-DDs by 20-30% and recognizing that "[d]ue

to the General Assembly's failure to approve the revenue plan proposed by Governor Quinn, the

State of Illinois will no longer be able to afford even basic services for thousands of people with

developmental disabilities").) If this court finds that, pursuant to Federal Rule of Civil

Procedure 23, a class action settlement is appropriate to address the claims set forth in the

Second Amended Complaint, it is likely that the State of Illinois will be able to save significant

resources in terms of future legal costs and fees. These savings would enure to the benefit of all

Illinois citizens, including individuals with disabilities who seek community-based care *and*

those who seek institutionalized care. Accordingly, the court encourages representatives of all

interested parties to continue settlement discussions with a view toward reaching a settlement

that is fair for all interested parties.

For the reasons set forth above, Burton A. Brown and Barbara A. Reilly's "Motion to

Intervene" (Dkt. No. 446) is dismissed as moot and "Proposed Intervenors' Motion for Limited

Intervention Pursuant to Fed. R. Civ. P. 24" (Dkt. No. 464) is granted.

ENTER:

_James F. Holderman_

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 7, 2010