**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY LIGAS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05 C 4331 |
| | ) | |
| vs. | ) | Chief Judge Holderman |
| | ) | Magistrate Judge Cole |
| JULIE HAMOS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT DECREE**

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DECREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  CLASS DEFINITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  DEFINITION OF TERMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  THE DEVELOPMENTAL DISABILITY SERVICES SYSTEM  . . . . . . . . . . . . . . . 7

V.  DETERMINATION OF CLASS MEMBERSHIP  . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.  STATEWIDE DATABASE AND WAITING LIST . . . . . . . . . . . . . . . . . . . . . . . . . 8

VII.  TRANSITION SERVICE PLANS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VIII.  BENCHMARKS FOR TRANSITIONS OF CLASS MEMBERS RESIDING IN
       ICFs-DD AS OF THE DATE OF APPROVAL OF THE DECREE  . . . . . . . . . . . . . 10

IX.  BENCHMARKS FOR TRANSITIONS OF CLASS MEMBERS NOT RESIDING
     IN ICFs-DD AS OF THE DATE OF APPROVAL OF THE DECREE . . . . . . . . . . . 11

X.  PROVISION OF SERVICES AFTER THE END OF THE SIXTH YEAR
    FOLLOWING APPROVAL OF THE DECREE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

XI.  DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XII.  OUTREACH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XIII.  IMPLEMENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XIV.  MONITORING AND COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

XV.  NAMED PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVI.  ATTORNEYS' FEES AND COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVII.  MISCELLANEOUS PROVISIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVIII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## INTRODUCTION AND BACKGROUND

Plaintiffs[1], who are Illinois residents with Developmental Disabilities, filed this class action lawsuit on July 28, 2005, seeking declaratory and injunctive relief to redress violations of the community integration mandates of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v. Plaintiffs allege that those federal statutes require Defendants to: (a) provide services, programs and activities in the most integrated setting appropriate to the needs of Individuals with Developmental Disabilities; (b) implement procedures to provide such services, programs and activities; and (c) offer Individuals with Developmental Disabilities a choice between services, supports and programs provided in ICFs-DD, and services, supports and programs that are integrated into the community. Defendants have denied liability. Intervenors are Illinois residents with Developmental Disabilities who have intervened to ensure that the State of Illinois continues to meet its obligations to also provide ICF-DD services.

In the interest of compromise and settlement, Plaintiffs, Intervenors, and Defendants have entered into a Stipulation agreeing to the form, and jointly moved for preliminary and final approval, of a proposed consent decree. On January 13, 2011, the Court entered an Order preliminarily approving the Decree set forth below in accordance with Parties' proposal. (Doc. No. 525.) Thereafter, pursuant to that Order, the Parties provided notice in accordance therewith, which the Court previously found, and hereby affirms, constitutes reasonable notice under the circumstances, and is in full compliance with the requirements of due process and governing law.

On June 15, 2011, the Court conducted a fairness hearing, at which it considered the written submissions of all interested persons and the presentations made in open court; and assessed the fairness and reasonableness of the Decree set forth below, taking into account the

---

[1] Certain capitalized terms set forth herein are defined in Section III, below.

benefits of litigation to the Plaintiffs as compared with the benefits offered by the Decree, the resources of the State of Illinois, and the needs of the Intervenors and other Individuals with Developmental Disabilities. As set forth in its Order dated June 15, 2011 (Doc. No. 547), the Court is of the opinion that the Decree set forth below represents a fair resolution of the competing interests of Plaintiffs, Intervenors, and Defendants; that it is fair, reasonable and adequate; and that it should be and is approved pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Therefore, upon all of the foregoing, and the Court being otherwise fully advised, the Court hereby ORDERS, ADJUDGES and DECREES as follows:

<u>**DECREE**</u>

## I.  JURISDICTION

1.  The Court has jurisdiction over this Litigation pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## II.  CLASS DEFINITION

2.  The Class is defined as those individuals in one of two sub-classes:

(a)  adult individuals in Illinois:

(i)  who have mental retardation and/or other developmental disabilities within the meaning of the ADA, 42 U.S.C. § 12131(2) and the Rehabilitation Act, 29 U.S.C. § 794(a), and who qualify for Medicaid Waiver services;

(ii)  who reside in private ICFs-DD with nine or more residents; and

(iii)  for whom Defendants (including Defendants' agencies, employees, contractors and agents, and those acting in concert with them) have a Current Record reflecting that the individual has affirmatively requested to receive Community-Based Services or placement in a Community-Based Setting; or

(b)  adult individuals in Illinois:

(i)  who have mental retardation and/or other developmental disabilities within the meaning of the ADA, 42 U.S.C. § 12131(2)

2

and the Rehabilitation Act, 29 U.S.C. § 794(a), and who qualify for Medicaid Waiver services;

(ii)   who reside in a Family Home and are in need of Community-Based Services or placement in a Community-Based Setting; and

(iii)   for whom Defendants (including Defendants' agencies, employees, contractors and agents, and those acting in concert with them) have a Current Record reflecting that the individual has affirmatively requested to receive Community-Based Services or placement in a Community-Based Setting.

## III.   DEFINITION OF TERMS

3.   As used herein, the following terms have the following meanings:

(a)   "Approval of the Decree" means the date defined in Paragraph 40, below.

(b)   "Class Counsel" means all of the attorneys that have appearances on behalf of the Named Plaintiffs in effect as of the Approval of the Decree, and each of the following organizations:  Equip for Equality; SNR Denton; Access Living of Metropolitan Chicago; and Roger Baldwin Foundation of ACLU, Inc.

(c)   "Class" and "Class Members" mean the persons who meet the definition set forth in Section II, above.

(d)   "Community-Based Services" means those services (other than a placement in a Community-Based Setting) available under the Waiver.

(e)   "Community-Based Setting" means a Waiver-funded residential setting with a maximum of eight (8) beds, but does not include an ICF-DD, that is the most integrated residential setting appropriate for an Individual where the setting is designed to promote independence in daily living, community integration, and economic self-sufficiency and enables the Individual to interact with non-disabled persons to the fullest extent possible.

3

(f)     "Community Service Provider" means a provider of Waiver-funded services, but does not include an ICF-DD or a State Operated Developmental Center.

(g)     "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

(h)     "Crisis" has the meaning set forth in Paragraph 21(a), below.

(i)     "Current Record" means an accurate record reflecting that the Individual, or the Individual's legal guardian, has affirmatively requested to receive Community-Based Services or placement in a Community-Based Setting, and, to the best of Defendants' knowledge, that record has not been withdrawn or retracted by the Individual or the Individual's legal guardian. All Individuals who objected (either personally, or through the Individual's legal guardian) to the Proposed Consent Decree that was the subject of the July 1, 2009 Fairness Hearing in this Litigation, on the grounds that they do not wish to receive Community-Based Services or placement in a Community-Based Setting shall be deemed to have retracted any record reflecting that, prior to such objection, he or she had affirmatively indicated that he or she seeks to receive Community-Based Services or placement in a Community-Based Setting.

(j)     "Decree" means this Consent Decree.

(k)     "Defendants" means the Director of the Illinois Department of Healthcare and Family Services; the Secretary of the Illinois Department of Human Services; and any of their successors.

(l)     "Developmental Disability" means a disability that is attributable to a diagnosis of mental retardation (mild, moderate, severe, profound), or a related condition. A related condition is attributable to: cerebral palsy or epilepsy, or any other condition, other than mental illness, found to be closely related to mental retardation because this condition results in impairment of general intellectual functioning or adaptive behavior similar

4

to that of persons with mental retardation, and requires treatment or services similar to those required for persons with mental retardation. In addition, this condition is manifested before the age of 22; is likely to continue indefinitely; and results in substantial functional limitations in three or more of the following areas of major life activity: self-care; understanding and use of language; learning; mobility; self-direction; capacity for independent living.

(m)     "Family Home" means a family home and does not include a Community-Integrated Living Arrangement, as defined at 210 ILCS §135/3(d), or an ICF-DD.

(n)     "ICF-DD" means any privately-owned long term care facility licensed by the Illinois Department of Public Health as an Intermediate Care Facility for the Developmentally Disabled, as defined at 77 Ill.Adm.Code §300.330.

(o)     "ICF/MR services" shall have the meaning set forth in 42 C.F.R. § 440.150.

(p)     "Implementation Plan" has the meaning set forth in Section XIII, below.

(q)     "Individual" means a person in Illinois 18 years of age or older who has one or more Developmental Disabilities and who is Medicaid-eligible.

(r)     "Intervenors" mean those individuals granted leave to intervene pursuant to the Court's Memorandum Opinion and Order entered on April 7, 2010. (Doc. No. 479)

(s)     "Intervenors' Counsel" means all of the attorneys who have appearances on behalf of the Intervenors in effect as of the Approval of the Decree.

(t)     "Litigation" means the matter *Ligas v. Hamos*, Case No. 05-4331, filed in the United States District Court for the Northern District of Illinois, Eastern Division.

(u)     "Monitor" means the person or entity appointed by the Court pursuant to Section XIV, below, to perform the functions more fully described therein.

5

(v)     "Named Plaintiffs" means the following people, each of whom the Court certified as a class representative in the Litigation:  David Cicarelli, Isaiah Fair, Stanley Ligas, Jamie McElroy, and Jennifer Wilson.

(w)     "Parties" means Plaintiffs and Defendants, collectively.

(x)     "Plaintiffs" means the Named Plaintiffs and Class Members, collectively.

(y)     "Protective Order" means the Protective Order entered by the Court in the Litigation on May 15, 2006 (Doc. No. 98).

(z)     "Qualified Professional" means an appropriately trained and qualified professional.

(aa)    "State Plan" means the plan that was submitted by the State of Illinois to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, in accordance with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, in effect as of the date of Approval of the Decree, including any amendments thereto.

(bb)    "Transition Service Plan" has the meaning set forth in Section VII, below.

(cc)    "Waiting List" has the meaning set forth in Paragraph 9, below.

(dd)    "Waiting List Class Members" has the meaning set forth in Paragraph 22(c), below.

(ee)    "Waiver" means the Illinois Home and Community-Based Services Waiver for Adults with Developmental Disabilities, as approved by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, in effect as of the date of Approval of the Decree, or any amendments thereto or similar waivers subsequently approved by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, but only to the extent such amendments or subsequent waivers expand the range and/or amount of services available to Individuals with Developmental Disabilities.

6

## IV.     THE DEVELOPMENTAL DISABILITY SERVICES SYSTEM

4.     **Development of Resource Capacity**.  The choices of Individuals with Developmental Disabilities, including Class Members, to receive Community-Based Services or placement in a Community-Based Setting or to receive ICF/MR services in an ICF-DD will be honored; provided, however, that this commitment to honoring choice does not alter Defendants' current obligations under existing law regarding licensed ICF-DD capacity system-wide or at any specific ICF-DD, and provided that, under current applicable law, this commitment does not entitle an Individual with Developmental Disabilities to receive ICF/MR services in a specific ICF-DD.  Defendants shall implement sufficient measures to ensure the availability of services, supports and other resources of sufficient quality, scope and variety to meet their obligations to such Individuals under the Decree and the Implementation Plan consistent with such choices. While the Decree remains in effect, any amendment to the State Plan submitted by the State pursuant to 42 U.S.C. § 1396, *et seq.* will continue to include ICF-DD services as an alternative choice for long-term care services for eligible Individuals with Developmental Disabilities. Nothing in this Decree shall impair Defendants' ability to make changes in their provision of supports and services to Individuals with Developmental Disabilities, including Class Members, regardless of setting, provided that Defendants continue to honor Individuals' choices and fulfill Defendants' obligations under the Decree and Implementation Plan.  Resources necessary to meet the needs of Individuals with Developmental Disabilities who choose to receive services in ICFs-DD shall be made available and such resources will not be affected by Defendants' fulfillment of their obligations under the Decree, including the obligations under Paragraphs 17 through 19 and 21 through 23.  Funding for services for each Individual with Developmental Disabilities will be based on the Individual's needs using federally approved objective criteria regardless of whether the Individual chooses to receive services in an ICF-DD or in a Community-Based Setting; provided, however, nothing in this Decree shall require Defendants to change their current method for establishing funding or from adopting new methods based upon federally approved objective criteria.

5.     **Resources and Budget Requests**.  Annual budgets submitted by Defendants on behalf of their agencies shall request sufficient funds necessary to develop and maintain the

7

services, supports and structures described in the Decree, consistent with the choices of Individuals with Developmental Disabilities, including Class Members. Defendants shall take steps sufficient to implement funding mechanisms that facilitate transition among service settings. Nothing contained in this Paragraph 5 shall be deemed to create or operate as (i) a condition or contingency upon which any term of the Decree depends; or (ii) a circumstance entitling Defendants to alter, amend or modify the implementation or timing of Defendants' obligations under the Decree.

## V.    DETERMINATION OF CLASS MEMBERSHIP

6.    Within thirty (30) days after Approval of the Decree, Defendants shall compile an initial list of Class Members by taking the list of Individuals to whom notice of Preliminary Approval of this Decree was sent, adding those Individuals from whom any of the Parties received  a written, affirmative request to receive Community-Based Services or placement in a Community-Based Setting after notice of Preliminary Approval of this Decree was sent, but excluding (i) those individuals who filed objections to the Proposed Consent Decree that was the subject of the July 1, 2009 Fairness Hearing as described in Paragraph 3(i) above, and (ii) those Individuals from whom Defendants receive written requests that the Individuals do not wish to receive Community-Based Services or placement in a Community-Based Setting.

7.    Within thirty (30) days after compiling the initial list described in Paragraph 6 above, Defendants shall confirm whether all Class Members on the initial list are included in the statewide database described in Paragraph 8 below and shall add – to the extent possible with available information – those Class Members not already included.

## VI.    STATEWIDE DATABASE AND WAITING LIST

8.    Defendants shall maintain a statewide database in which all Class Members are enrolled. Defendants must promptly and regularly add Individuals to this database as they become Class Members. If Defendants receive written requests from Individuals that the Individuals would not wish to receive Community-Based Services or placement in a Community-Based Setting, Defendants shall promptly revise the database to reflect the fact that such Individuals are no longer Class Members. Defendants must update all enrollment information on an annual basis.

9.      Class Members not residing in ICFs-DD as of the date of Approval of the Decree who are enrolled in the statewide database described in Paragraph 8 above shall be placed on a Waiting List with selection prioritized by the Class Member's urgency of need for Community-Based Services or placement in a Community-Based Setting, the length of time that has passed since the Class Member enrolled, geographical considerations and other factors.  Defendants must promptly and regularly update the Waiting List as Class Members are added to the database described in paragraph 8, above.

## VII.    TRANSITION SERVICE PLANS

10.      Within no more than twelve months prior to the development of a Transition Service Plan, Defendants shall present to the Class Member, in an objective manner, all of his or her service alternatives under the State Plan and any applicable Waiver, determine whether, after such presentation, the Class Member requests Community-Based Services or placement in a Community-Based Setting and obtain from the Class Member a completed and executed DDPAS-10 Form and a DMHDD-1238 Form (the "Request Forms") evidencing Class Member's request.  Upon receipt of the Request Forms from the Class Member, Defendants shall develop a Transition Service Plan specific to, and centered on, each Class Member as each Class Member is selected from the statewide database to receive Community-Based Services or placement in Community-Based Settings under this Decree.

11.      The Transition Service Plan shall describe the services the Class Member requires in a Community-Based Setting or through Community-Based Services; where and how such services can be developed and obtained; the supports and services the Class Member will need during his or her transition to a Community-Based Setting; and a timetable for completing that transition.

12.      The Transition Service Plan shall be developed by a Qualified Professional in conjunction with the Class Member and, where one has been appointed, the Class Member's legal guardian, and, where appropriate, the Class Member's family members, friends and support staff who are familiar with the Class Member.

13.      The process for developing a Transition Service Plan shall focus on the Class Member's personal vision, preferences, strengths and needs in home, community and work

environments and shall reflect the value of supporting the Class Member with relationships, productive work, participation in community life, and personal decision-making.

14.     All services and supports in the Transition Service Plan must be integrated into the community to the maximum extent possible, consistent with the choices of the Class Member and the Class Member's legal guardian.

15.     The Transition Service Plan shall not be limited by the current availability of services, provided, however, that nothing in this paragraph obligates Defendants to provide the types of services beyond those included in the Waiver and/or the State Plan.

16.     The Transition Service Plan shall be completed within sufficient time to provide appropriate and sufficient transitions of Class Members in accordance with the deadlines set forth in the Decree.

## VIII.   BENCHMARKS FOR TRANSITIONS OF CLASS MEMBERS RESIDING IN ICFs-DD AS OF THE DATE OF APPROVAL OF THE DECREE

17.     Subject to the interim requirements set forth below, within six (6) years after Approval of the Decree, all Class Members residing in ICFs-DD as of the date of Approval of the Decree (regardless of when in this timeframe the Class Member affirmatively requested placement in a Community-Based Setting) will transition to Community-Based Settings consistent with their Transition Service Plans, if, at the time of transition, the Class Member requests placement in a Community-Based Setting, as confirmed and documented in accordance with Paragraph 10.

18.     Within two and a half years after Approval of the Decree:  not less than one-third of the total number of those Class Members residing in ICFs-DD as of the date of Approval of the Decree who have, within two (2) years after the date of Approval of the Decree, affirmatively requested placement in a Community-Based Setting will be transitioned to Community-Based Settings consistent with their Transition Service Plans.

19.     Within four and a half years after Approval of the Decree:  not less than two-thirds of the total number of those Class Members residing in ICFs-DD as of the date of Approval of the Decree who have, within four (4) years after the date of Approval of the Decree, affirmatively requested placement in a Community-Based Setting will be transitioned to Community-Based Settings consistent with their Transition Service Plans.

10

## IX.   BENCHMARKS FOR TRANSITIONS OF CLASS MEMBERS NOT RESIDING IN ICFs-DD AS OF THE DATE OF APPROVAL OF THE DECREE

20.   Within one (1) year after Approval of the Decree, Defendants shall screen all Class Members residing in a Family Home who are enrolled in the database described in Paragraph 8 as of the date of Approval of the Decree regarding the Class Members' potential eligibility and need for developmental disabilities services, including (i) a determination of whether such Class Members meet the Crisis criteria set forth in Paragraph 21(a) and, (ii) after presenting to the Class Member, in an objective manner, all of his or her service alternatives under the State Plan and any applicable Waiver, a determination of whether the Class Member requests Community-Based Services or placement in a Community-Based Setting, as confirmed and documented in accordance with Paragraph 10.

21.   **Class Members Who Reside in a Family Home and Are Determined to be in a Situation of Crisis.**

(a)   For purposes of the Decree, an Individual is in a situation of "Crisis" if he or she is at imminent risk of abuse, neglect, or homelessness.  The provision of interim emergency services (including interim placement in an ICF-DD where no placement in a Community-Based Setting was immediately available) will not necessarily exclude the Individual from being deemed to be in a situation of Crisis.  Some examples of circumstances that constitute Crisis include, but are not limited to circumstances:

(i)   where the Individual's caregiver(s) are deceased;

(ii)   where the Individual's caregiver is unable to address the support needs of the Individual, thereby jeopardizing the Individual's health, well-being, and/or safety;

(iii)   where physical and/or mental injury and/or sexual abuse is being inflicted on the Individual;

(iv)   where the Individual is homeless or without domicile; or

(v)     where the Individual's behaviors (e.g., verbal and /or physical aggression, bodily harm to self and/or others) put the Individual and/or family member(s) at risk of serious harm.

(b)     If, following a screening, the Individual who is determined to be in Crisis requests appropriate Community-Based Services to be provided in the Family Home or requests placement in a Community-Based Setting, Defendants will promptly develop, in conjunction with the Class Member, a Transition Service Plan. Transition Service Plans for such Class Members shall be developed as set forth in Section VII, above.

(c)     Defendants shall ensure that all Class Members who are determined to be in a situation of Crisis, and who request to receive Community-Based Services and/or placement in a Community-Based Setting, receive such services and/or placement in such setting expeditiously. If a Class Member is determined to be in Crisis and then moves into an ICF-DD before Defendants are able to provide a placement in a Community-Based Setting, that change in the Class Member's residential status will not in itself change the determination of Crisis or change the Defendants' obligation to place the Class Member in a Community-Based Setting expeditiously, provided that, at the time of transition to a Community-Based Setting, the Class Member requests placement in a Community-Based Setting, as confirmed and documented at that time. There is no limit to, or cap upon, the number of Class Members in Crisis who shall be served pursuant to the Decree.

22.     **Benchmarks for Transitions of "Waiting List Class Members"**

(a)     Class Members who become residents of ICFs-DD after the date of Approval of the Decree, but who did not reside in ICFs-DD as of the date of Approval of the Decree, shall be enrolled in the database described in Paragraph 8, placed on the Waiting List described in Paragraph 9 and served in accordance with this Paragraph 22, provided that the Class

12

Member requests Community-Based Services or placement in a Community-Based Setting, as confirmed and documented in accordance with Paragraph 10.

(b)    Class Members residing at a Family Home who, as a result of the screening described in Paragraphs 20 and 21(a), are not determined to be in a situation of Crisis but who have requested and been identified as appropriate for Community-Based Services or placement in a Community-Based Setting will be placed on the Waiting List described in Paragraph 9 and served in accordance with this Paragraph 22.

(c)    Collectively, the Class Members identified in sub-Paragraphs 22(a) and 22(b), above, shall be referred to as "Waiting List Class Members."

(d)    Within two (2) years after Approval of the Decree, Defendants shall provide, in accordance with the Class Members' Transition Service Plans, appropriate Community-Based Services and/or placement in Community-Based Settings for at least 1,000 Waiting List Class Members who are selected from the Waiting List described in Paragraph 9 above, with these Class Members served in order of priority. In each of the third, fourth, fifth and sixth years following Approval of the Decree, Defendants shall serve at least 500 additional Waiting List Class Members who are selected from the Waiting List, again in order of priority. The obligations set forth in this Paragraph 22(d) do not obligate Defendants to serve more than 500 additional Waiting List Class Members who are selected from the Waiting List in each of the third, fourth, fifth, and sixth years following Approval of the Decree.

## X.    PROVISION OF SERVICES AFTER THE END OF THE SIXTH YEAR FOLLOWING APPROVAL OF THE DECREE

23.    All Class Members who are on the Waiting List after the end of the sixth year following Approval of the Decree shall receive appropriate Community-Based Services and/or placement in a Community-Based Setting, such that they move off the Waiting List at a reasonable pace, provided that the Class Members have requested such services and/or settings at

the point when they are to move off the Waiting List and that the requests are confirmed and documented in accordance with Paragraph 10.

## XI.   DISPUTE RESOLUTION

24.    Any Class Member who disputes a decision by Defendants or a Community Service Provider regarding eligibility for, or delivery of, Community-Based Services or placement in a Community-Based Setting shall, pursuant to governing law, have the right to appeal or seek administrative or judicial review of such decisions through Defendants' existing Fair Hearings process (as set forth in 89 Ill.Adm.Code Part 120) or as otherwise provided by law.  Class Members also may avail themselves of any informal appeal process that currently exists.

## XII.   OUTREACH

25.    Defendants shall maintain a fair and accessible process by which Individuals with Developmental Disabilities or their legal guardians can affirmatively request in writing to receive Community-Based Services and/or placement in a Community-Based Setting or to receive ICF-MR services in an ICF-DD, and Defendants shall maintain up-to-date records of those requests.  Defendants, in conjunction with Class Counsel, also shall ensure that Individuals with Developmental Disabilities, and their guardians and/or families, have the opportunity to receive complete, accurate, and objective information regarding all alternative choices for long-term care services for eligible Individuals with Developmental Disabilities.  Nothing in this Paragraph, or any other provision of this Decree, requires Defendants to provide this information to Individuals or their guardians or families who are not interested in changing their current placement.  All costs for outreach shall be borne by Defendants.  Details about how Defendants shall conduct the obligations set forth in this Paragraph 25 will be set forth in the Implementation Plan described below.

## XIII.   IMPLEMENTATION

26.    **Overview and Contents of the Implementation Plan**.  Defendants, with the input of the Monitor, Plaintiffs, Class Counsel, Intervenors and Intervenors' Counsel shall create and implement an Implementation Plan to accomplish the obligations and objectives set forth in the Decree.  Intervenors and Intervenors' Counsel's input shall be limited to those portions of the

14

Implementation Plan which relate to Paragraphs 4-10, 25 and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD. The Implementation Plan must, at a minimum:

      (a)    establish specific tasks, timetables, goals, programs, plans, strategies and protocols to assure that Defendants fulfill the requirements of each provision of the Decree;

      (b)    describe the hiring, training and supervision of the personnel necessary to implement the Decree;

      (c)    describe necessary resource development activities, including actions, inter-agency agreements, requests for proposals and the development of other resources necessary to implement the Decree;

      (d)    describe the methods and mechanisms by which Defendants shall comply with the obligations set forth in Paragraph 25, above;

      (e)    identify, based on information known at the time the Implementation Plan is prepared, any services or supports required in Transition Service Plans formulated pursuant to the Decree that are not currently available in the appropriate quantity, quality or geographic location; and

      (f)    identify, based on information known at the time the Implementation Plan is prepared, any services and supports which, based on demographic or other data, are expected to be required in the following six months to meet the obligations of the Decree.

      27.    Within ninety (90) days after Approval of the Decree, Defendants shall provide the Monitor, Plaintiffs, Class Counsel, Intervenors and Intervenors' Counsel with a draft Implementation Plan. The Monitor, Plaintiffs and Class Counsel will participate in developing and finalizing the Implementation Plan, which shall be finalized and filed with the Court within six (6) months following Approval of the Decree. Intervenors may provide input to the Parties and the Monitor on the Implementation Plan. In the event the Monitor or Plaintiffs disagree with the Defendants' proposed Implementation Plan, the matter shall be submitted to the Court for resolution. If Intervenors disagree with the Defendants' proposed Implementation Plan with

respect to provisions in Paragraphs 4-10, 25 and 45 regarding Individuals who choose to receive ICF/MR services in an ICF-DD, Intervenors may submit any such issue to the Court for resolution. The Monitor, Plaintiffs, or Intervenors shall submit such issues within fourteen (14) days after the filing of the Implementation Plan.

28.    The Implementation Plan shall be updated and amended annually, or at such earlier intervals as Defendants deem necessary or appropriate. The Monitor, Plaintiffs, Class Counsel, Intervenors and Intervenors' Counsel may review and comment upon any such updates or amendments. Intervenors' and Intervenors' Counsel's comments shall be limited to those updates or amendments which relate to provisions in Paragraphs 4-10, 25 and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD. In the event the Monitor or Plaintiffs disagree with the Defendants' proposed updates or amendments, the matter may be submitted to the Court for resolution. If Intervenors disagree with the Defendants' proposed updates or amendments relating to provisions in Paragraphs 4-10, 25 and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD, Intervenors may submit such issue to the Court for resolution.

29.    The Implementation Plan, and any amendments or updates thereto, shall be set forth in a separate Court Order supplemental to the Decree.

## XIV.   MONITORING AND COMPLIANCE

30.    **Appointment of a Monitor**. The Court shall appoint an independent and impartial Monitor who is knowledgeable concerning the management and oversight of programs serving Individuals with Developmental Disabilities. The Parties shall endeavor to agree on a single candidate for Monitor, after obtaining input from Class Members. Intervenors may provide input to the Parties on the Monitor. Within twenty-one (21) days after Approval of the Decree, the Parties shall submit to the Court their joint recommendation or separate nominations for a Monitor. If the Parties cannot agree, Plaintiffs and Defendants shall each submit to the Court the names of no more than two qualified professionals or organizations who are experienced in the design and development of community programs for Individuals with Developmental Disabilities, and experienced in the administration and monitoring of specialized services for Individuals with Developmental Disabilities. Each Party will have seven (7) days to

16

comment on the qualifications of the other Party's candidate(s). Intervenors may, within the same seven (7) days, comment on the qualifications of any one or more of the Parties' candidates. The Court then shall select the Monitor from the names submitted by the Parties. In the event the Monitor resigns or otherwise becomes unavailable, and the Parties cannot agree on a replacement Monitor to recommend to the Court, the process described above will be used to select a replacement Monitor.

      31.    **Role of the Monitor**. The duties of the Monitor shall include gauging Defendants' compliance with the Decree, identifying actual and potential areas of non-compliance with the Decree, facilitating the resolution of compliance issues without Court intervention, and recommending appropriate action by the Court in the event an issue cannot be resolved by discussion and negotiation among the Monitor, the Parties, and, with respect to provisions in Paragraphs 4-10, 25, and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD, the Intervenors. The Monitor may retain such staff and/or consultants as appropriate to assist in the performance of his or her duties.

      32.    **Development of Measurable Standards for Evaluation.**

          (a)    Within 90 days after the Monitor's appointment, the Monitor shall submit to the Parties and the Intervenors a set of objective standards to guide the Monitor in evaluating Defendants' compliance with the Decree. Intervenors may provide input to the Parties and the Monitor on the standards. In the event any of the Parties believe that such standards are insufficient or inappropriate, they shall first meet and confer with the Monitor in an effort to revise the standards in a manner acceptable to the Monitor and the Parties. In the event the Intervenors believe that such standards are insufficient or inappropriate with respect to Paragraphs 4-10, 25 and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD, they shall first meet and confer with the Monitor and the Parties in an effort to revise the standards in a manner acceptable to the Monitor, the Parties, and the Intervenors. In the event that following any such meet and confer, the Monitor, the Parties, and the

Intervenors are unable to agree on such standards, any of the Parties or the Intervenors may seek appropriate relief from the Court within 14 days after they meet and confer. Once finalized, the objective standards will be made publicly available.

(b)    Appropriate standards by which the Monitor evaluates Defendants' compliance with the Decree shall include, but are not limited to, the following:

(i)    whether Transition Service Plans meet the criteria set forth in Section VII;

(ii)    whether the benchmarks set forth in Sections VIII and IX and X have been satisfied;

(iii)    whether Class Members who are determined to be in Crisis receive services expeditiously in accordance with Paragraph 21;

(iv)    the extent to which, at periodic intervals, Class Members are being placed in Community-Based Settings; and

(v)    the extent to which, at periodic intervals, Class Members are receiving Community-Based Services.

(c)    None of the standards adopted by the Monitor pursuant to this Paragraph 32 shall in any way modify, change or otherwise abrogate any of the terms of the Decree or Defendants' obligations under the Decree.

33.    **Review and Evaluation of Data and Information**. The Monitor shall review and evaluate Defendants' compliance with the terms of the Decree. Not less than every six (6) months, Defendants shall provide to the Monitor, Plaintiffs, Class Counsel, Intervenors and Intervenors' Counsel and make publicly available, a detailed report containing data and information sufficient to evaluate Defendants' compliance with the Decree and Defendants' progress towards achieving compliance. Prior to the first report, the Parties and the Monitor will agree on the data and information that must be included in such reports. The Intervenors may provide input to the Parties and the Monitor on the proposed data and information. Defendants will not refuse any request by the Monitor for documents or other information that are

18

reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree, and Defendants will, upon reasonable notice, permit confidential interviews of Defendants' staff or consultants, except their attorneys. The Monitor will have access to all Class Members and their records and files, as well as to those service providers, facilities, buildings and premises that serve, or are otherwise pertinent to, Class Members, where such access is reasonably related to the Monitor's review and evaluation of Defendants' compliance with the Decree. The Defendants shall comply with Plaintiffs' requests for information that are reasonably related to Defendants' compliance with the Decree, including without limitation requests for records and other relevant documents pertinent to implementation of the Decree or to Class Members. Class Counsel also shall be permitted to review the information provided to the Monitor. All information provided to the Monitor and/or Class Counsel pursuant to the Decree shall be subject to the Protective Order.

34. **Reporting**. The Monitor shall file annual reports with the Court, which shall be served on all Parties and Intervenors and be made publicly available. Such reports shall include the information necessary, in the Monitor's professional judgment, for the Court, Plaintiffs, and Intervenors to evaluate Defendants' compliance or non-compliance with the terms of the Decree. The Monitor may file additional reports as necessary.

35. **Compliance**. In the event the Monitor finds Defendants not in compliance with the Decree, the Monitor shall promptly meet and confer with the Parties in an effort to agree on steps necessary to achieve compliance. In the event the Monitor finds Defendants not in compliance with the Decree relating to provisions in Paragraphs 4-10, 25, and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD, the Monitor shall promptly meet and confer with the Parties and the Intervenors in an effort to agree on steps necessary to achieve compliance. In the event that Plaintiffs believe that Defendants are not complying with the terms of the Decree, Plaintiffs shall notify the Monitor and Defendants of Defendants' potential non-compliance. The Monitor then shall review Plaintiffs' claims of actual or potential non-compliance and, as the Monitor deems appropriate in his or her professional judgment, meet and confer with Defendants and Plaintiffs in an effort to agree on steps necessary to achieve compliance with the Decree. If the Monitor and Parties agree, such

steps shall be memorialized in writing and set forth in a separate Court Order supplemental to the Decree. In the event that the Monitor is unable to reach agreement with Defendants and Plaintiffs, the Monitor may seek appropriate relief from the Court. In the event that Plaintiffs believe that Defendants are not in compliance with the Decree and that the Monitor refuses or fails to act, Plaintiffs may seek appropriate relief from the Court.

In the event that Intervenors believe that Defendants are not complying with the terms of the Decree relating to provisions in Paragraphs 4-10, 25, and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD, Intervenors shall notify the Monitor and Parties of Defendants' potential non-compliance. The Monitor then shall review Intervenors' claims of actual or potential non-compliance and, as the Monitor deems appropriate in his or her professional judgment, meet and confer with the Parties and Intervenors in an effort to agree on steps necessary to achieve compliance with the Decree. If the Monitor, the Intervenors and Parties agree, such steps shall be memorialized in writing and set forth in a separate Court Order supplemental to the Decree. In the event that the Monitor is unable to reach agreement with Intervenors, Defendants and Plaintiffs, the Monitor may seek appropriate relief from the Court. In the event that the Intervenors believe that Defendants are not in compliance with the Decree and that the Monitor refuses or fails to act, Intervenors may seek appropriate relief from the Court.

The Monitor will not communicate with the Court without advance notice to the Parties and the Intervenors. Individuals who choose to receive ICF/MR services in an ICF-DD shall have the same rights as Class Members to enforce this Decree, provided however that such Individuals' rights to enforce this Decree shall be limited to enforcement of provisions in Paragraphs 4-10, 25, and 45 of this Decree regarding Individuals who choose to receive ICF/MR services in an ICF-DD.

36. **Compensation of the Monitor**. Defendants shall compensate the Monitor and his or her staff and consultants at their usual and customary rate. Defendants shall reimburse all reasonable expenses of the Monitor and the Monitor's staff, consistent with the guidelines set forth in the "Governor's Travel Control Board Travel Guide for State Employees." Defendants

20

reserve their right to seek relief from the Court if Defendants believe that any of the Monitor's charges are inappropriate or unreasonable.

## XV. NAMED PLAINTIFFS

37.     As part of the settlement of the Litigation, within sixty (60) days after Approval of the Decree, Defendants shall offer each of the Named Plaintiffs the opportunity to receive appropriate Community-Based Services or placement in a Community-Based Setting.  Provision of services to the Named Plaintiffs pursuant to this provision shall not be used to determine any other particular Class Member's eligibility for services under the terms of the Decree.

## XVI. ATTORNEYS' FEES AND COSTS

38.     In full settlement of all attorneys' fees incurred in connection with the Litigation, Defendants shall pay $1,740,000.00 to Class Counsel and $500,000.00 to Intervenors' Counsel. In addition, in full settlement of all out-of-pocket costs and expenses (not to include attorneys' fees) incurred by Class Counsel, Defendants shall pay to Class Counsel reasonable costs and expenses incurred by Class Counsel through and including the Approval of the Decree and any appeal thereof.  Class Counsel shall provide Defendants with their out-of-pocket costs and expenses and appropriate supporting documentation so that Defendants have an opportunity to review them and, if necessary, meet and confer with Class Counsel and bring any disputes before the Court.  Defendants shall pay one-half of the aforesaid amounts due Class Counsel and one-half of the aforesaid amount due Intervenors' Counsel in State Fiscal Year 2012 (which begins July 1, 2011) and one-half of the aforesaid amounts due Class Counsel and one-half of the aforesaid amount due Intervenors' Counsel in State Fiscal Year 2013 (which begins July 1, 2012).  All of the aforesaid amounts shall be distributed to Class Counsel and Intervenors' Counsel in the manner set forth in written instructions provided by Class Counsel and Intervenors' Counsel, respectively.  Furthermore, such amounts shall be set forth in one or more Judgment Orders to be entered by the Court within fourteen (14) days after Approval of the Decree.  Defendants shall complete and submit all paperwork necessary for payment of the first half of the aforesaid amounts, plus applicable statutory post-judgment interest, within (a) five (5) business days after expiration of the time to appeal the Decree without the filing of a Notice of Appeal, or after the issuance of the mandate by the highest reviewing court, whichever is later,

or (b) July 1, 2011, whichever is later.  Defendants shall complete and submit all paperwork necessary for payment of the second half of the aforesaid amounts, plus applicable statutory post-judgment interest, on July 2, 2012.

39.     Nothing herein shall preclude the Court from imposing sanctions or other relief for non-compliance with the Decree.

## XVII.  MISCELLANEOUS PROVISIONS

40.     **Approval of the Decree**.  "Approval of the Decree" shall be deemed to occur on the date the Court enters the Decree.

41.     **Costs of Notices**.  The cost of all notices hereunder or otherwise ordered by the Court shall be borne by Defendants.

42.     **Signatories**.  Each undersigned representative of a Defendant to this Litigation and the Attorney General for the State of Illinois certifies that he or she is authorized to enter into the terms and conditions of the Decree and to execute and bind legally such Defendant to this document.  Each undersigned representative of Plaintiffs and Class Counsel certifies that he or she is authorized to enter into the terms and conditions of the Decree and to execute and bind legally the Plaintiffs and Class Counsel to this document.  Each undersigned representative of the Intervenors certifies that he or she is authorized to enter into the terms and conditions of the Decree and to execute and bind legally those individuals whom he or she represents to this document.

43.     **Delivery of Notices or Mailings.**

(a)     Delivery of notices or mailings to Plaintiffs shall be made to: Equip for Equality, Attn.:  Barry Taylor (or his successor), 20 North Michigan Avenue, Suite 300, Chicago, Illinois 60602; and SNR Denton US LLP, Attn.:  John Grossbart, 233 South Wacker Drive, Suite 7800, Chicago, Illinois 60606.

(b)     Delivery of notices or mailings to Defendants shall be made to:  Office of the Illinois Attorney General, Attn: Brent D. Stratton, 100 W. Randolph Street, Chicago, Illinois 60601 and Office of the Illinois Attorney General,

Attn: Karen Konieczny, 160 N. LaSalle St., Suite N-1000, Chicago, Illinois 60601.

(c)     Delivery of notices or mailings to Intervenors shall be made to: Scott M. Mendel, K&L Gates LLP, 70 W. Madison St., Suite 3100, Chicago, IL 60602, William Choslovsky, Neal, Gerber & Eisenberg, LLP, Two N. LaSalle St., Suite 1700, Chicago, IL 60602, James W. Ducayet, Sidley Austin LLP, One S. Dearborn, Chicago, IL 60603.

(d)     The Parties and Intervenors may modify the instructions for delivery of notices or mailings contained in this Paragraph 43 without Court approval.

44.    **Waiver**. Defendants have waived their right to oppose entry of the Decree by this Court or to challenge any provision of the Decree. Defendants have waived their right to appeal the Decree or any other matter that has occurred to date in connection with the Litigation.

45.    Nothing in this Decree alters the legal rights that Individuals with Developmental Disabilities, including Class Members, otherwise may have, including the right to choose to receive ICF/MR services in an ICF-DD. Nothing in this Decree alters the legal rights that an Individual with Developmental Disabilities otherwise may have to work directly (i) with the State-identified point of entry for developmental disability services and/or (ii) with an ICF-DD to be approved to move into a then-existing licensed vacancy in an ICF-DD, including a vacancy created by a departing resident.

46.    Nothing in this Decree alters the legal rights, authority, or responsibilities of the legal guardian(s) of any Individual with Developmental Disabilities under state or federal law or regulations.

## XVIII.   TERMINATION

47.    The Court shall retain exclusive jurisdiction to fully oversee, supervise, modify and enforce the terms of the Decree. The Court shall retain such jurisdiction for at least nine (9) years following the Approval of the Decree.

48.    The Parties, jointly or separately, may request termination of the monitoring process described in Section XIV at any time after nine (9) years from Approval of the Decree. If, after nine years from Approval of the Decree or any time thereafter, Defendants and the

Monitor agree that Defendants have substantially complied with the terms of the Decree, Defendants shall notify Plaintiffs and Intervenors in writing of their desire to terminate the monitoring process ("Termination Request"). Plaintiffs shall have not less than 120 days from receipt of the Termination Request to respond. Intervenors may provide input to the Parties and the Monitor on the Termination Request. During those 120 days, Plaintiffs shall have the opportunity to conduct reasonable discovery concerning factual issues relevant to the determination of compliance. If Plaintiffs oppose the Termination Request, Plaintiffs must file a motion within 120 days from the date of receipt of Defendants' Termination Request.

49.     The Court will grant Defendants' Termination Request and terminate the monitoring process if the Court finds that Defendants have substantially complied with the terms of the Decree and the Court determines that Defendants have implemented and are maintaining a system that complies with the Decree.

50.     Termination of the Court's jurisdiction over the Decree may occur only in the event of a successful request to terminate the monitoring process pursuant to Section XVIII. The Decree shall remain in effect, and the Court shall retain its jurisdiction over the Decree, until a final order is entered granting the Termination Request and all appellate rights and/or appeals have been exhausted.

SO ORDERED THIS 15th DAY OF JUNE, 2011.


_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court


[SIGNATURE PAGE FOLLOWS]

EACH UNDERSIGNED PARTY and the Intervenors enter into this Consent Decree in

the matter of *Ligas v. Maram*, Case No. 05-4331, pending in the United States District Court for

the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____

**FOR CLASS COUNSEL:**

Date: _____

**FOR DEFENDANT, SECRETARY OF**
**ILLINOIS DEPARTMENT OF HUMAN**
**SERVICES:**

Date: _____

**FOR DEFENDANT, DIRECTOR OF**
**ILLINOIS DEPARTMENT OF**
**HEALTHCARE AND FAMILY**
**SERVICES:**

Date: _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____

**FOR THE MISERICORDIA RESIDENT INTERVENORS:**

Date: _____

Scott M. Mendel
**K&L GATES, LLC**

**FOR THE MISERICORDIA WAITING LIST INTERVENORS:**

Date: _____

William Choslovsky
**NEAL, GERBER & EISENBERG LLP**

EACH UNDERSIGNED PARTY and the Intervenors enter into this Consent Decree in

the matter of *Ligas v. Maram*, Case No. 05-4331, pending in the United States District Court for

the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____ _____

**FOR CLASS COUNSEL:**

Date: _____ _____

**FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:**

Date: _____ _____

**FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:**

Date: Jan. 11, 2011 _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____ _____

**FOR THE MISERICORDIA RESIDENT INTERVENORS:**

Date: _____ _____

Scott M. Mendel
**K&L GATES, LLC**

**FOR THE MISERICORDIA WAITING LIST INTERVENORS:**

Date: _____ _____

William Choslovsky
**NEAL, GERBER & EISENBERG LLP**

EACH UNDERSIGNED PARTY and the Intervenors enter into this Consent Decree in

the matter of *Ligas v. Maram*, Case No. 05-4331, pending in the United States District Court for

the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____          _____

**FOR CLASS COUNSEL:**

Date: _____          _____

**FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:**

Date: _____          _____

**FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:**

Date: _____          _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____January 11, 2011_____          _____
                                          Chief Deputy Attorney General

**FOR THE MISERICORDIA RESIDENT INTERVENORS:**

Date: _____          _____

Scott M. Mendel
**K&L GATES, LLC**

**FOR THE MISERICORDIA WAITING LIST INTERVENORS:**

Date: _____          _____

William Choslovsky
**NEAL, GERBER & EISENBERG LLP**

EACH UNDERSIGNED PARTY and the Intervenors enter into this Consent Decree in the matter of *Ligas v. Maram*, Case No. 05-4331, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____       _____

**FOR CLASS COUNSEL:**

Date: _____       _____

**FOR DEFENDANT, SECRETARY OF ILLINOIS DEPARTMENT OF HUMAN SERVICES:**

Date: _____       _____

**FOR DEFENDANT, DIRECTOR OF ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES:**

Date: _____       _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____       _____

**FOR THE MISERICORDIA RESIDENT INTERVENORS:**

Date: Jan. 7, 2011       _____

Scott M. Mendel
**K&L GATES, LLC**

**FOR THE MISERICORDIA WAITING LIST INTERVENORS:**

Date: _____       _____

William Choslovsky
**NEAL, GERBER & EISENBERG LLP**

EACH UNDERSIGNED PARTY and the Intervenors enter into this Consent Decree in

the matter of *Ligas v. Maram*, Case No. 05-4331, pending in the United States District Court for

the Northern District of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____          _____

**FOR CLASS COUNSEL:**

Date: _____          _____

**FOR DEFENDANT, SECRETARY OF
ILLINOIS DEPARTMENT OF HUMAN
SERVICES:**

Date: _____          _____

**FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:**

Date: _____          _____

**AS ATTORNEY FOR DEFENDANTS:**

Date: _____          _____

**FOR THE MISERICORDIA RESIDENT INTERVENORS:**

Date: _____          _____

Scott M. Mendel
**K&L GATES, LLC**

**FOR THE MISERICORDIA WAITING LIST INTERVENORS:**

Date: _January 11, 2011_____          _____

William Choslovsky
**NEAL, GERBER & EISENBERG LLP**

FOR THE 154 INTERVENORS FROM SOUTHERN ILLINOIS:

Date: 12/23/10

William P. Crain
CRAIN, MILLER & WERNSMAN, LTD.

FOR THE PARENTS, GUARDIANS, OR OTHER LEGAL REPRESENTATIVES
OF BEVERLY FARM FOUNDATION'S INTERVENORS:

Date: _____

Nicholas J. Lynn
DUANE MORRIS LLP

FOR THE PARK LAWN FAMILY INTERVENORS:

Date: _____

James H. Himmel

FOR THE 221 INTERVENORS:

Date: _____

Judith S. Sherwin
SHEFSKY & FROELICH, LTD.

FOR THE 366 INTERVENORS FROM CENTRAL AND SOUTHERN ILLINOIS:

Date: _____

Jason T. Lundy
POLSINELLI SHUGHART PC

FOR THE 154 INTERVENORS FROM SOUTHERN ILLINOIS:

Date: _____    _____

William F. Crain
CRAIN, MILLER & WERNSMAN, LTD.


FOR THE PARENTS, GUARDIANS, OR OTHER LEGAL REPRESENTATIVES
OF BEVERLY FARM FOUNDATION'S INTERVENORS:

Date: _____1/10/11_____    _____

Nicholas J. Lynn
DUANE MORRIS LLP


FOR THE PARK LAWN FAMILY INTERVENORS:

Date: _____    _____

James H. Himmel

FOR THE 221 INTERVENORS:

Date: _____    _____

Judith S. Sherwin
SHEFSKY & FROELICH, LTD.


FOR THE 366 INTERVENORS FROM CENTRAL AND SOUTHERN ILLINOIS:

Date: _____    _____

Jason T. Lundy
POLSINELLI SHUGHART PC

FOR THE 154 INTERVENORS FROM SOUTHERN ILLINOIS:

Date: _____        _____

William P. Crain
CRAIN, MILLER & WERNSMAN, LTD.


FOR THE PARENTS, GUARDIANS, OR OTHER LEGAL REPRESENTATIVES
OF BEVERLY FARM FOUNDATION'S INTERVENORS:

Date: _____        _____

Nicholas J. Lynn
DUANE MORRIS LLP


FOR THE PARK LAWN FAMILY INTERVENORS:

Date: ___12/28/10_____        _____

James H. Himmel

FOR THE 221 INTERVENORS:

Date: _____        _____

Judith S. Sherwin
SHEFSKY & FROELICH, LTD.


FOR THE 366 INTERVENORS FROM CENTRAL AND SOUTHERN ILLINOIS:

Date: _____        _____

Jason T. Lundy
POLSINELLI SHUGHART PC

**FOR THE 154 INTERVENORS FROM SOUTHERN ILLINOIS:**

Date: _____      _____

William P. Crain
**CRAIN, MILLER & WERNSMAN, LTD.**

**FOR THE PARENTS, GUARDIANS, OR OTHER LEGAL REPRESENTATIVES
OF BEVERLY FARM FOUNDATION'S INTERVENORS:**

Date: _____      _____

Nicholas J. Lynn
**DUANE MORRIS LLP**

**FOR THE PARK LAWN FAMILY INTERVENORS:**

Date: _____      _____

James H. Himmel

**FOR THE 281 INTERVENORS:**

Date: _____      _____

Judith S. Sherwin
**SHEFSKY & FROELICH, LTD.**

**FOR THE 366 INTERVENORS FROM CENTRAL AND SOUTHERN ILLINOIS:**

Date: _____      _____

Jason T. Lundy
**POLSINELLI SHUGHART PC**

**FOR THE 154 INTERVENORS FROM SOUTHERN ILLINOIS:**

Date: _____     _____

William P. Crain
**CRAIN, MILLER & WERNSMAN, LTD.**

**FOR THE PARENTS, GUARDIANS, OR OTHER LEGAL REPRESENTATIVES
OF BEVERLY FARM FOUNDATION'S INTERVENORS:**

Date: _____     _____

Nicholas J. Lynn
**DUANE MORRIS LLP**

**FOR THE PARK LAWN FAMILY INTERVENORS:**

Date: _____     _____

James H. Himmel

**FOR THE 221 INTERVENORS:**

Date: _____     _____

Judith S. Sherwin
**SHEFSKY & FROELICH, LTD.**

**FOR THE 366 INTERVENORS FROM CENTRAL AND SOUTHERN ILLINOIS:**

Date: _____     _____12/27/10_____

Jason T. Lundy
**POLSINELLI SHUGHART PC**



FOR THE 110 INTERVENORS FROM EAST CENTRAL ILLINOIS ICE DISTRICT

Date: _____

Michael A. Pollard
THOMAS, MAMER & HAUGHEY LLP

FOR THE 174 INTERVENORS FROM DOWNSTATE ILLINOIS

Date: _____

Jonathan S. Quinn
DRINKER BIDDLE & REATH LLP

FOR THE 202 INTERVENORS FROM CENTRAL ILLINOIS

Date: _____

Matthew J. Gryzlo
Colleen Kinsey
POLSINELLI SHUGHART PC

FOR INTERVENORS DOUGLAS BROWN AND ELIZABETH ANN BARTLETT

Date: _____

Burton A. Brown
John A. Riley
LAW OFFICES OF BURTON A. BROWN

35

**FOR THE 119 INTERVENORS FROM 13 CENTRAL ILLINOIS ICF-DDS:**

Date: _____     _____

Melissa A. Thomas
**THOMAS, MAMER & HAUGHEY LLP**


**FOR THE 174 INTERVENORS FROM DOWNSTATE ILLINOIS:**

Date: _January 6, 2011_     _Warren von Credo Baker_

Warren von Credo Baker
**DRINKER BIDDLE & REATH LLP**


**FOR THE 202 INTERVENORS FROM CENTRAL ILLINOIS:**

Date: _____     _____

Matthew J. Murer
Kathryn M. Stalmack
**POLSINELLI SHUGHART PC**


**FOR INTERVENORS DOUGLAS S. BROWN AND ELIZABETH ANN BARTLETT**

Date: _____     _____

Burton A. Brown
Barbara A. Riley
**LAW OFFICES OF BURTON A. BROWN**

**FOR THE 119 INTERVENORS FROM 13 CENTRAL ILLINOIS ICF-DDS:**

Date: _____     _____

Melissa A. Thomas
**THOMAS, MAMER & HAUGHEY LLP**


**FOR THE 174 INTERVENORS FROM DOWNSTATE ILLINOIS:**

Date: _____     _____

Warren von Credo Baker
**DRINKER BIDDLE & REATH LLP**


**FOR THE 202 INTERVENORS FROM CENTRAL ILLINOIS:**

Date: _____12/27/10_____     _____

Matthew J. Murer
Kathryn M. Stalmack
**POLSINELLI SHUGHART PC**


**FOR INTERVENORS DOUGLAS S. BROWN AND ELIZABETH ANN BARTLETT**

Date: _____     _____

Burton A. Brown
Barbara A. Riley
**LAW OFFICES OF BURTON A. BROWN**

FOR THE 119 INTERVENORS FROM 13 CENTRAL ILLINOIS ICF-DDS:

Date: _____     _____

Melissa A. Thomas
THOMAS, MAMER & HAUGHEY LLP


FOR THE 174 INTERVENORS FROM DOWNSTATE ILLINOIS:

Date: _____     _____

Warren von Credo Baker
DRINKER BIDDLE & REATH LLP


FOR THE 202 INTERVENORS FROM CENTRAL ILLINOIS:

Date: _____     _____

Matthew J. Murer
Kathryn M. Stalmack
POLSINELLI SHUGHART PC


FOR INTERVENORS DOUGLAS S. BROWN AND ELIZABETH ANN BARTLETT

Date: _____1/14/11_____     _Burton A. Brown_

Burton A. Brown
Barbara A. Riley
LAW OFFICES OF BURTON A. BROWN

**FOR THE MT. ST. JOSEPH'S INTERVENORS:**

Date: _6/9/2011_

James W. Ducayet
Christopher A. Ripple
**SIDLEY AUSTIN LLP**