UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stanley Ligas, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:05-cv-04331 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| Elizabeth M. Whitehorn, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Clarification and Resolution of whether the *Ligas* Consent Decree ("Decree") allows interim crisis-driven placements in State Operated Developmental Centers ("SODCs") [935]. After hearing in-person oral arguments on April 14, 2026, and reviewing the parties' briefing on the issue, the Court determines the Decree does not allow interim crisis-driven placement in SODCs.

BACKGROUND

A. Consent Decree Language

Paragraph 21 of the Decree addresses "Class Members Who Reside in a Family Home and Are Determined to be in a Situation of Crisis." (Dkt. 549 at *IX.21.) For such Individuals, the Decree provides that:

> If, following a screening, the Individual who is determined to be in Crisis requests appropriate Community-Based Services to be provided in the Family Home or requests placement in a Community-Based Setting, Defendants will promptly develop, in conjunction with the Class Member, a Transition Service Plan.

(*Id.* at *IX.21.(b).) The Decree further provides that an individual is deemed to be in "Crisis," and in need of "interim emergency services" when:

1

[H]e or she is at imminent risk of abuse, neglect, or homelessness. The provision of interim emergency services (*including interim placement in an [Intermediate Care Facility for individuals with Developmental Disabilities] ("ICF-DD") where no placement in a Community-Based setting was immediately available*) will not necessarily exclude the Individual from being deemed to be in a situation of Crisis.

## B. Present Interpretation Dispute

Defendants currently use SODCs as crisis placements for *Ligas* Class Members when they are unable to secure placement in a Community-Based Setting or ICF-DD.  In August of 2024, after Plaintiffs objected to this practice, the Court ordered the parties to brief the issue of "whether interim placement of class members in crisis in [SODCs] constitutes a violation of the Consent Decree's express terms."  In response to that Order, in October of 2024, both parties confirmed a shared understanding that it is a violation of the Decree for Defendants to use SODCs for interim crisis-driven placements.  *See* (Dkt. 866 at *1) (Defendants stating that "the decree makes it a violation to place class members in crisis in SODCs"); *see* (Dkt. 867 at *3) (Plaintiffs stating that where a community crisis placement is immediately available, the Decree only allows interim institutional placement in an ICF-DD).

Despite this shared understanding dating back to at least 2024, in a recent filing on January 26, 2026, Defendants took the position that "nowhere does the Decree state that a Class Member cannot be placed in an SODC," and that "Plaintiffs' proposal to 'stop' placement in SODCs entirely must be denied because it is disconnected from the language of the Decree and the reality of a crisis placement." *See* (Dkt. 930 at *3.)  In a subsequent email exchange with Plaintiffs' counsel, Defendants further affirmed their position, stating:

> The Decree does not explicitly prohibit SODC crisis placement in that it does not state: "no LCM in crisis may be placed in an SODC." Paragraph 21 says that private ICF-DDs are "includ[ed]" as permissible crisis placement, suggesting the ICF-DDs may be but one permissible crisis placement.

(Dkt. 935-2 at *1.)

Plaintiffs raised the issue of Defendants' apparent change in their interpretation of the Decree at a status hearing before this Court on January 28, 2026. In response, Defendants' counsel stated that "you know, kind of the language and exact terminology and phrasing we're using may seem different to Plaintiffs' ears, it's the same thing we've been saying, which is the consent decree does not require 100 percent compliance with the decree," and said no change in position had occurred. Plaintiffs, in reply, argued that Defendants' new assertion that SODCs are an additional institutional setting that Defendants may use for *Ligas* Class Members in crisis cannot be squared with their earlier concession that "the decree makes it a violation to place class members in crisis in SODCs."

The Court then stated that further written positions were needed on the issue and permitted Plaintiffs to move for clarification of Defendants' position on the specific question of "whether you can admit a person who is in crisis into an SODC for an interim placement under paragraph 21." In their written position, Defendants further confirmed their position that use of SODCs for interim crisis-driven placements is not a violation of the Decree.

Accordingly, the Court now responds to Plaintiffs' Motion for Clarification and Resolution ("Motion") to determine whether the Decree allows Defendants to use SODCs for crisis-driven placements.

**LEGAL STANDARD**

For purposes of construction, a judicially approved consent decree is essentially a contract and thus interpreted according to principles of state contract law. *Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021). It is uncontested that the Court should apply Illinois contract law. The Decree was negotiated and signed in Illinois, the *Ligas* class is comprised of adults in Illinois with intellectual and developmental disabilities ("I/DD"), Defendants are Illinois state officials, and the obligations under the Decree all are to be performed in Illinois. Accordingly, under Illinois law, "the court's primary

3

objective in construing a contract is to give effect to the intent of the parties. The court must first look to the language of the contract alone … given its plain and ordinary meaning, is the best indication of the parties' intent." *Holmes*, 991 F.3d at 780 (cleaned up).

**DISCUSSION**

In their Motion, Plaintiffs argue Defendants' new assertion that SODCs are an additional institutional setting that Defendants may use for *Ligas* Class Members in crisis cannot be squared with their earlier concession that "the decree makes it a violation to place class members in crisis in SODCs." (Dkt. 924 at *2.) Plaintiffs further state that clarification and resolution on this issue is necessary to finalize the multi-year FY26 Implementation Plan and to "get to a point where a consent decree is no longer necessary." Accordingly, the Court addresses the parties' arguments in turn. (*Id.*)

Plaintiffs argue the plain language of Paragraph 21 of the Decree "clearly prohibits use of SODCs for Interim placements." (*Id.* at *3). Specifically, Plaintiffs argue a person in crisis under Paragraph 21(b) is only to be served in one of two ways: receiving Community-Based Services while remaining in their family home, or by placement in a "Community-Based Setting," which by definition includes "a waiver-funded residential setting with a maximum of eight (8) beds, *but does not include an ICF-DD.*" (Dkt. 549 at *III.3.(e)) (emphasis added); (Dkt. 924 at *4.) Outside of those two permissible services, the only allowance for Defendants to place Individuals in an institutional setting comes from Paragraph 21(a), which states "interim emergency services (*including interim placement in an ICF-DD where no placement in a Community-Based setting was immediately available*) will not necessarily exclude the Individual from being deemed to be in a situation of Crisis. (Dkt. 549 at IX.21.(a))(emphasis added). None of those options, Plaintiffs argue, include SODCs.

Plaintiffs further argue Defendants' attempt to construe this language to allow use of SODCs as emergency interim placements, violates multiple rules of contract construction. First, Plaintiffs

argue Defendants' new interpretation of Paragraph 21 fails because it renders the definition of ICF-DD a nullity since the term "ICF-DD" cannot mean a "privately-owned long term care facility" and an SODC at the same time – the terms are mutually exclusive. (Dkt. 925 at *6)(citing *Clanton v Oakbrook Healthcare Ctr., Ltd.*, 2023 IL 129067 ¶¶ 30, 34, 226 N.E.3d 1266, 1274-75 (Ill. 2023) (contracts are to be construed according to their terms, considering the agreement as a whole, and harmonizing all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other). Second, Plaintiffs argue that Defendants' new interpretation is not in harmony with the remainder of the Decree and its intent because it would allow Defendants to use SODCs for crisis-driven placements as freely and frequently as they wish and without any limitation. (Dkt. 924 at *7.) Most troubling to Plaintiffs, they argue Defendants' new interpretation would give Defendants free reign to abandon any attempt to use ICFs-DD for crisis-driven placements, much less meet their obligation to develop the capacity to handle *Ligas* Class Members' crises in preferred Community-Based Settings as required by the Decree. (*Id.*)

Defendants, as an initial matter, argue "SODC crisis placements are so rare as to not warrant any interpretation by the Court on this issue" as evidenced by the FY26 Implementation Plan which shows Defendants only placed 6 class members in crisis in SODCs and that over 85% of all individuals (not just Class Members) in crisis are placed in the community. (Dkt. 942 at *1-2.) As to any necessary interpretation, Defendants argue the only logical meaning of Paragraph 21(a) is to ensure that Class Members are not excluded from a "crisis" designation, which increases their access to services, merely by virtue of receiving "interim emergency services," not that SODCs are impermissible interim emergency placements. (*Id.* at *3.) Defendants primarily argue what is in parentheses in Paragraph 21(a)— "(including interim placement in an ICF-DD)"—is meant to be *illustrative*, not exhaustive, of the "interim emergency services" that the State can provide. (Dkt. 942 at *4) (citing *State Auto. Mut. Ins. Co. v. Tony's Finer Foods Enters., Inc.*, 589 F. Supp. 3d 919, 928-29 (N.D. Ill. 2022) (Seeger, J.)).

Defendants further maintain recognizing that SODCs can also be considered "interim emergency services" under the plain meaning of the Decree does not alter—or have anything to do with—the definition of an ICF-DD throughout the Decree. (Dkt. 942 at *5.) Rather, they argue, the language of the Decree merely indicates that "interim emergency service" is inclusive of ICF-DD placement rather than exclusive of SODC placement. (*Id.* at *6.)

Next, Defendants argue Plaintiffs' reading of the Decree would exclusively—and dangerously—limit interim emergency services to ICF-DDs, which is not required by the Decree and not grounded in the reality of crisis placement. (*Id.* at *6-7.) Specifically, they explain three major issues with Plaintiffs interpretation: first, even in an emergency, the state cannot force private ICF-DDs to accept a Class Member, meaning that an SODC may be the only alternative to homelessness; second, Plaintiffs' interpretation would also mean that Defendants must refuse to follow court orders for SODC crisis placements; and third, Plaintiffs' interpretation would require Defendants to disregard any requests for SODC crisis placements by guardians of Class Members with appropriate legal authority. (*Id.* at *7.) Finally, Defendants argue Plaintiffs' Motion seeks to separate "what is permitted under the terms of the Decree…from the question of what level of performance Defendants must achieve to establish substantial compliance with the Decree." Defendants argue that Paragraph 21(a) must be viewed through the lens of substantial compliance, especially here, where the vast majority of crisis placements are directly to community-based settings, and only a fraction of all crisis placements involving Class Members result in an SODC placement. (Dkt. 942 at *8.) Defendants conclude, because substantial compliance with the Decree is the ultimate goal under the case law, and not perfect compliance, Plaintiffs proposed interpretation runs afoul to Defendants obligations under the law. *See* (*id.* at *7.)

The Court ultimately rejects Defendants' present Decree interpretation, which contravenes the parties' prior shared interpretation, and holds that Defendants' use of SODCs for interim crisis-

driven placements violates the Decree. Contracts are to be construed according to their terms, considering the agreement as a whole and giving effect to all provisions of the contract, such that no language is rendered superfluous. *Clanton v Oakbrook Healthcare Ctr., Ltd.*, 2023 IL 129067 ¶¶ 30, 34, 226 N.E.3d 1266, 1274-75 (Ill. 2023). While a parenthetical with the word "including" generally contains a list of illustrative examples, interpretation of those examples still requires consideration of the contract as a whole, its context, the purpose of the instrument, and the intent of the parties. *See*, e.g., *Chickasaw Nation v. United States*, 534 U.S. 84 at 88-94 (2001)(determining the meaning of disputed parenthetical after considering its language, its context, the general purpose of the statute in which it was contained, and its legislative history). Relevant here, while the list of permissible crisis-placements—community-based settings and ICF-DDs where the former is unavailable—is not *per se* exhaustive, this list is definitely suggestive of the parties' intent. The enumerated permissible placements are narrow enough in nature to suggest that large, state-operated facilities fall outside of the scope of placements covered by Paragraph 21 of the Decree. *See State Auto. Mut. Ins. Co.*, 589 F. Supp. 3d at 926-930 (finding list of illustrative examples in insurance policy exclusion, while not exhaustive, was still too narrow to encompass the insured's claim for coverage when the exclusion was read as a whole).

Additionally, when the Court considers the nature of the enumerated placements in the context of the entire Decree, it is clear that the exclusion of SODCs in Paragraph 21 was not just inadvertent, but a deliberate choice. *See Barnhart v. Peabody Coal Co.*, 540 U.S. 149, 168 (2003). At the time the parties negotiated the Decree, they were aware of SODCs, as evidenced by the Decree's direct reference to SODCs in its "Definition of Terms," which specifically states that SODCs are **not** included in the definition of "Community Service Providers." *See* (Dkt. 549 at *III.3.(f)). Had the Parties intended to allow Defendants' use of SODCs for interim crisis-driven placements, they certainly would have included them, since both examples of "emergency interim services"

affirmatively exclude SODCs from their scope as defined under the Decree. Based on the illustrative examples, the parties' prior shared understanding, and the context of the Decree as a whole, the Court infers that SODCs were deliberately excluded from the list of permissible, crisis-driven placements.

The Court does acknowledge, however, that a finding of Defendants' substantial compliance with the Decree must account for SODC placements pursuant to court orders, guardian requests, and alternatives to homelessness. This ruling will allow the parties to reach the question of whether Defendants are using SODC placements beyond the tolerance of the substantial compliance standard for Decree termination. When the Court does make such a determination it will account for these limited circumstances where SODCs must be utilized. The Court's present ruling does not affect its substantial compliance determination but primarily requires Defendants to track and account for those emergency placements, whether the placement is required based on a court order or guardian choice, used as an emergency alternative to homelessness, or just in plain violation of the Decree without excuse. Collection of such data is necessary for any subsequent termination of the Decree.

**CONCLUSION**

For the foregoing reasons, the Court determines the Consent Decree does not allow interim crisis-driven placement in SODCs. The Court enters and continues further ruling on the number of individuals in crisis Defendants can place in SODCs while still substantially complying with the Consent Decree.

**IT IS SO ORDERED.**

Date: 5/13/2026

Entered: _____
       SHARON JOHNSON COLEMAN
       United States District Judge